452 So.2d 968 (1984)
E. Peter GOLDRING, Appellant,
v.
STATE of Florida, DEPARTMENT OF ENVIRONMENTAL REGULATION, Appellee.
No. 83-2880.
District Court of Appeal of Florida, Third District.
June 12, 1984.
Rehearing Denied July 17, 1984.
*969 John G. Fletcher, South Miami, for appellant.
E. Gary Early, Tallahassee, for appellee.
Before SCHWARTZ, C.J., and NESBITT and BASKIN, JJ.
NESBITT, Judge.
Goldring applied to the Department of Environmental Regulation (DER) for a permit to mine limestone on a site in Dade County. The matter was referred to a hearing officer who concluded that the DER did not have jurisdiction over the property in question. The DER rejected this legal conclusion, determined that it had jurisdiction and found that Goldring had not demonstrated an entitlement to a permit. We find that the hearing officer correctly decided that the DER did not have jurisdiction and thus we reverse the order appealed.
The project site is in the middle of a vast prairie, lying approximately four and one-half miles to the north of Florida Bay. The site is wet enough to support sawgrass as the dominant vegetation. For approximately ten per cent of the year, the land is completely submerged. The sole source of water on the site is rain water which either falls immediately on the site or to the northwest.
The basis upon which jurisdiction is asserted is Florida Administrative Rule 17-4.28(2) which provides in pertinent part:
Pursuant to Section 403.061, 403.087 or 403.088 F.S., those dredging or filling activities which are to be conducted in, or connected directly or via an excavated water body or series of excavated water bodies to, the following categories of waters of the state to their landward extent as defined by Section 17-4.02(17), F.A.C. require permit from the department prior to being undertaken:
... .
(c) bays, bayous, sounds, estuaries, and natural tributaries thereto;
There can be no doubt that the Florida Bay which defines coastal areas sought of the site in question constitutes state waters. The issue before us is whether the site upon which the mining permit is sought constitutes the landward extent and boundary of those state waters. Reasoning that the test of the landward extent is that area which is dominated by a species on the list contained in Florida Administrative Code Rule 17-4.02(17), the DER concluded that the subject site whose dominant species, sawgrass, is on that index must be within the landward extent of the Florida Bay. Goldring admits, as he must, that the dominant species is sawgrass, but contends that the presence of an index species is not a conclusive indication of the landward extent of a water body. We agree.
We begin our analysis with section 403.817, Florida Statutes (1981) which authorizes the DER to establish rules relating to the landward extent. Paragraph 1 recognizes that the levels of waters of the state rise and fall making it difficult to determine the natural landward extent of waters. Paragraph 2, after authorizing the DER to establish by rule the method for determining the landward extent of waters continues:

*970 Such extent shall be defined by species of plants or soils which are characteristic of those areas subject to regular and periodic inundation by the waters of the state.
While upon quick perusal it might appear that the presence of an index species is a conclusive indication of the landward extent of a water body, a closer reading of the statute indicates that such was not the intent.
The legislature apparently recognized that certain plants like to have their "feet wet" on a periodic basis; thus, it determined that the existence of these plants in an area provided a good indication of the landward extent and obviated the need for detailed and scientific measurements of the tidal flow. In other words, the landward extent is not defined as that area upon which certain vegetation is found, but rather is that area subject to regular and periodic inundation by a water of the state as indicated by the presence of particular species common to such an area. Thus, as the hearing officer correctly pointed out:
The most important point from Section 403.817 for this case is that the landward extent of a state water is that portion of land covered by water as the result of dynamic, regular, and periodic action from the state water body itself. The river must flood, the tide must rise or the stream must meander in order to create the landward extent of each water body. (e.s.)
The presence of an index species is but a way of measuring the action of the state waters.
The foregoing concept is embodied in Florida Administrative Code Rule 17-4.28(2)(g) where it states:
The department recognizes that the natural border of certain water bodies listed in this section may be difficult to establish because of seasonal fluctuations in water levels and other characteristics unique to a given terrain. The intent of the vegetation indices in Section 17-4.02(17), F.A.C., is to guide in the establishment of the border of the water bodies listed in this section. It is the intent of this rule to include in the boundaries of such water bodies areas which are customarily submerged and exchange waters with a recognizable water body (i.e., areas within the landward extent of waters of the state as defined in Section 17-4.02(17)). (e.s.)
The requirement that the area is "customarily submerged" and "exchanges water" is another way of expressing that the landward extent is that area subject to regular and periodic inundation.
The DER in reaching its conclusion that it had jurisdiction found that there was a one-way flow of water from the subject site to the Florida Bay and that this satisfied the requirement of an "exchange." However, from what we have already observed it is clear that the word "exchange" in the rule must contemplate a flow of water from the water of the state to the site. That water flows in the opposite direction does not trigger the agency's right to regulate.
Applying these principles to the facts of the present case, we readily conclude that Mr. Goldring's property is not within the landward extent of Florida Bay. The site in question lies four and one-half miles north of the recognizable edge of Florida Bay. Were we to utilize the vegetation index as the determinative factor, then the presence of sawgrass would clearly place the property within the landward extent of Florida Bay. However, the anomaly is that Florida Bay is salt water, while sawgrass is a fresh water species. Clearly, the dynamic action of the Bay does not have an effect on Mr. Goldring's property. The fact that the land is incidentally wet enough from rainfall to support sawgrass does not supplant the requirement that the land be subject to inundation by the water of the state. Accordingly, we find that the area in question is not within the landward extent of Florida Bay and thus, the DER does not have jurisdiction.
*971 One final feature of the DER's order requires our attention. After finding that there was jurisdiction, the DER rejected the hearing officer's conclusion that no policy statement existed sufficient to support the use of the cumulative impact doctrine but declined to remand for a factual determination of whether there was a cumulative impact because there were independent reasons for denying the permit. The effect of this ruling was that if, upon review, it was determined that: (a) the DER had jurisdiction; and (b) the stated basis for denial of the permit was improper, the DER would have another opportunity to rebuff Mr. Goldring's efforts to obtain a permit. We will not permit the DER's attempt to nullify a decision rendered by this court and in any event hold that the record does not contain the requisite factual foundation and explication of public policy to support the use of the cumulative impact doctrine.
Reversed.