477 So.2d 532 (1985)
DEPARTMENT OF ENVIRONMENTAL REGULATION, Petitioner,
v.
E. Peter GOLDRING, Respondent.
No. 65769.
Supreme Court of Florida.
August 29, 1985.
Rehearing Denied November 13, 1985.
E. Gary Early, Asst. Gen. Counsel, Tallahassee, for petitioner.
John G. Fletcher, South Miami, for respondent.
Robert A. Ginsburg, County Atty., and Robert A. Duvall, Asst. County Atty., Miami, for Metropolitan Dade County, amicus curiae.
McDONALD, Justice.
We have for review the district court decision in Goldring v. State, Department of Environmental Regulation, 452 So.2d 968 *533 (Fla. 3d DCA 1984), which directly and expressly conflicts with State, Department of Environmental Regulation v. Falls Chase Special Taxing District, 424 So.2d 787 (Fla. 1st DCA 1982), review denied, 436 So.2d 98 (Fla. 1983). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
The issue here is the appropriate standard for determining the landward extent of state waters for Department of Environmental Regulations' (DER) regulatory jurisdiction over dredge and fill operations. We reject the narrow interpretation in Goldring.
In 1981 E. Peter Goldring requested a permit from DER so that he could mine limestone on his property in southeast Dade County. The DER staff recommended denial of the permit, and the matter was referred to a hearing officer. After considering the evidence presented by DER and Goldring, the hearing officer entered a recommended order concluding that DER lacked jurisdiction over the proposed mining operation. The hearing officer determined that the presence of saw grass, a freshwater aquatic plant, on Goldring's property could not establish that property within the landward extent of saltwater Florida Bay for DER regulatory jurisdiction. DER's final order, however, rejected the hearing officer's jurisdictional conclusions. DER founded its jurisdiction on the predominance of saw grass on Goldring's property coupled with the flow of freshwater across that property to the state waters of Florida Bay. The final order went on to deny Goldring's permit application.
On appeal the district court reversed DER's final order. The district court agreed with the hearing officer's conclusion that the landward extent of state waters for DER jurisdiction includes only property subject to regular and periodic inundation by state waters. It concluded that DER's own rule requires an exchange of waters, which can only be met by a flow of water from state waters to the property at issue. Therefore, according to the district court, water flow from the property to state waters does not constitute the necessary exchange of waters. The court also held that the presence of aquatic vegetation alone cannot establish an exchange of waters, particularly where, as here, a freshwater plant is used to demonstrate an exchange of waters with saltwater state waters. 452 So.2d at 970. The district court subsequently awarded Goldring $5,000 in attorney's fees.
We agree with DER that the district court has construed DER's dredge and fill jurisdiction over the landward extent of state waters too narrowly by effectively limiting such jurisdiction to uncertain high tide or floodplain lines. Because we find merit in DER's position, we also vacate the attorney's fees awarded to Goldring.
In section 403.817, Florida Statutes (1983), the legislature recognized the difficulty inherent in determining the landward extent of state waters for regulatory purposes. This statute authorized DER to set out by administrative rule
The method for determining the landward extent of the waters of the state for regulatory purposes. Such extent shall be defined by species of plants or soils which are characteristic of those areas subject to regular and periodic inundation by the waters of the state. The application of plant indicators to any areas shall be by dominant species.
Id. DER implemented the legislative intent of section 403.817 by adopting a list of aquatic plant species in Florida Administrative Code Rule 17-4.02(17) and by adopting the following language in its dredge and fill rule:
The department recognizes that the natural border of certain water bodies listed in this section may be difficult to establish because of seasonal fluctuations in water levels and other characteristics unique to a given terrain. The intent of the vegetation indices in Section 17-4.02(17), F.A.C., is to guide in the establishment of the border of the water bodies listed in this section. It is the intent of this rule to include in the boundaries of such water bodies areas which are customarily submerged and *534 exchange waters with a recognizable water body (i.e., areas within the landward extend of waters of the state as defined in Section 17-4.02(17)).

Fla. Admin. Code Rule 17-4.28(2) (emphasis added). Neither section 403.817 nor the DER rules compel the district court's restrictive definition of the landward extent of state waters for DER regulatory jurisdiction.
The legislature enacted chapter 403 to protect the air and waters of Florida from pollution and degradation. § 403.021, Fla. Stat. (1983). The provisions of statutes enacted in the public interest should be given a liberal construction in favor of the public. State v. Hamilton, 388 So.2d 561 (Fla. 1980). DER liberally construed section 403.817 when it adopted the administrative rules implementing that statute. Courts should accord great deference to administrative interpretations of statutes which the administrative agency is required to enforce. Pan American World Airways, Inc. v. Florida Public Service Commission, 427 So.2d 716, 719 (Fla. 1983). The decision under review fails to do this.
In this case DER interpreted its rules to require an exchange of waters through the flow of water from the Goldring property to the state waters of Florida Bay. We agree that an exchange of water need not be a two-way flow; an exchange occurs wherever water meets water. The district court's interpretation of an exchange of waters as requiring an inundation of the subject property by state waters ignores the need for regulatory control over pollution which may flow from the property into state waters.
The district court's decision requires DER to base its jurisdiction over the landward extent of state waters by using high tide or floodplain lines. Not only is this interpretation contrary to the remedial purpose of chapter 403, it also conflicts with Falls Chase, where the court rejected DER's attempt to assert dredge and fill jurisdiction based upon "ordinary high water mark" rather than the predominance of listed aquatic vegetation. 424 So.2d at 792-93. We hold that DER's dredge and fill jurisdiction depends upon the predominance of listed aquatic vegetation on the subject property along with an exchange of waters, whether one-way or two-way, with state waters. We quash Goldring and vacate the attorney's fee award.
Our decision does not give DER jurisdiction over every fish pond containing listed aquatic vegetation. DER's dredge and fill rule precludes such areas from inclusion in the landward extent of state waters:
Isolated areas which infrequently exchange water with a described water body or provide only insignificant benefit to the water quality of a water body are intended to be designated as uplands.
Fla. Admin. Code Rule 17-4.28(g). DER has jurisdiction here because the property in this case provides a significant benefit to Florida Bay by filtering water travelling toward Florida Bay from the Everglades.
Goldring argues that even if DER has jurisdiction, he is still entitled to a limestone mining permit because the evidence before the hearing officer demonstrated compliance with all permit standards. We disagree. The hearing officer found that Goldring's proposed mining operation may well violate specific conductance standards for saltwater intrusion. DER approved this finding. There is competent substantial evidence to support such a finding. This finding is an adequate basis to deny the permit.
Accordingly, we quash the decision under review and direct the district court to approve the final order of DER.
It is so ordered.
BOYD, C.J., and OVERTON and EHRLICH, JJ., concur.
ADKINS, ALDERMAN and SHAW, JJ., dissent.