936 So.2d 1143 (2006)
Michael WARD, Petitioner,
v.
The STATE of Florida, Respondent.
No. 3D05-1277.
District Court of Appeal of Florida, Third District.
August 16, 2006.
Bennett H. Brummer, Public Defender, and Roy A. Heimlich, Assistant Public Defender, for petitioner.
Charles J. Crist, Jr., Attorney General, and Thomas C. Mielke, Assistant Attorney General, for respondent.
Before COPE, C.J., and SHEPHERD and ROTHENBERG, JJ.
SHEPHERD, J.
The petitioner, Michael Ward, seeks a writ of prohibition to bar the lower court from commencing a trial to have him declared a "sexually violent predator" and involuntarily committed to the custody of the Florida Department of Children and Families ("the Department") for care, control, and treatment pursuant to the Jimmy Ryce Act, ("the Ryce Act"), §§ 394.910-930, Fla. Stat. (2005). The question we must answer is whether the State is authorized under the Ryce Act to seek to involuntarily commit to the Department for care and treatment, a person who has been convicted of a sexually violent crime *1144 in the past and who is brought into "total confinement," as that term is defined, after January 1, 1999, for any crime, sexual or non-sexual in nature. We hold that it is, and therefore deny the writ.[1]

Facts
In 1969, Ward allegedly committed two separate acts of rape in violation of section 794.01 of the Florida Statutes (1969). In 1970, he was found incompetent to stand trial on these charges and was committed to the South Florida State Hospital. Ward escaped from this confinement in 1976 and was re-arrested after allegedly committing several other crimes, including two more rapes. On October 5, 1976, Ward pled guilty to all four rape charges. In all four cases, Ward admitted he had broken into each victim's house to commit the crime. He was sentenced to fifty years in state prison on each charge, with the sentences to run concurrently. In 1983, this court reversed the 1969 convictions on the ground that Ward was misadvised by counsel of the consequences of his plea. Ward v. State, 433 So.2d 1221, 1223 (Fla. 3d DCA 1983).[2] As a result, the State nolle prossed the 1969 charges.
In the intervening years, Ward mounted post-conviction challenges to his fifty-year sentence on the remaining 1976 offenses, so that by 1993 he was released from state prison. Since then, Ward has, from time to time, been re-incarcerated and sentenced for various non-sexual offenses, most recently and significantly in January 2004 to thirty-six months in state prison for burglary of an occupied conveyance and possession of burglary tools. At that time, however, no sexual offense was alleged in addition to the burglary charge. The State filed its petition to commit Ward under the Ryce Act during the course of this incarceration.

Discussion
Ward argues that the trial court lacks jurisdiction to proceed because he was not in custody for a sexually violent offense, as that term is defined under the Ryce Act, see § 394.912(9), Fla. Stat. (2004), at the time the State filed its petition. For us to properly evaluate this claim, we turn to the jurisdictional provision of the Ryce Act in effect at the time the State commenced its Ryce Act proceeding. See Hale v. State, 891 So.2d 517, 520 (Fla.2004)(applying the jurisdictional provision of the Ryce Act in effect at the time the proceeding against Hale was commenced). The provision reads as follows:
Applicability of [the][A]ct
This part applies to all persons currently in custody who have been convicted of a sexually violent offense, as that term is defined in s. 394.912(9), as well as to all persons convicted of a sexually violent offense and sentenced to total confinement in the future.
§ 394.925, Fla. Stat. (1999).[3]
Grammatically speaking, it is clear that this section of the Ryce Act consists of two *1145 independently acting clauses. First, the Ryce Act "applies to all persons currently in custody who have been convicted of a sexually violent offense" as that term is defined; and second, to "all persons convicted of a sexually violent offense and sentenced to total confinement in the future." It is also apparent from a cursory review of the two clauses, aided by pronouncements of the Florida Supreme Court and lower appellate courts of this state, that the clauses are possessed of parallel and complimentary features. For example, it is now settled law that the purpose of the first clause is to address sexual predators who were in custody on the Ryce Act's effective date, January 1, 1999, see State v. Atkinson, 831 So.2d 172, 173-74 (Fla.2002)(confirming that the phrase "currently in custody" in the first clause means in custody as defined by the Act on January 1, 1999), while the second clause is meant to address all other sexual predators. In addition, the use of the term "total confinement" has been interpreted to be co-extensive with "in custody" despite the employment by the legislature of different terminology in each clause. Gordon v. Regier, 839 So.2d 715, 718-19 (Fla. 2d DCA 2003)(concluding that "the word `custody' is synonymous with `total confinement'" for purposes of section 394.925). Finally, of course, the potential committee must, in either case, be possessed of a qualifying sexual offense.[4]
It is against this textual and interpretive backdrop that we examine the as yet unresolved question of the reach of the second clause incarcerative provision. If Ward were a potential "first clause" committee, the State would possess the unquestionable right to proceed. Hale, 891 So.2d at 521 (holding that although the defendant must be in custody on January 1, 1999, the custody need not be one for a qualifying sexual offense). In our case, Ward is a potential "second clause" committee. Although we admit the language of the second clause is not a model of clarity, we consider that under the better reading and interpretation of this section of the Ryce Act, potential second clause committees, like potential first clause committees, are subject to the reach of the Ryce Act whatever may have been the reason for their qualifying confinement.
We believe this conclusion is supported by a careful consideration of the text of the section of the Act that we are required to construe, applicable rules of statutory construction, and the history and purpose of the Act.

I.
We begin our explication for reaching this result with an analysis of the text of the provision in question, see Hale, 891 So.2d at 521 ("the intent of the legislature must guide [the court's] analysis, and that intent must be determined primarily from *1146 the language of the statute"), and find instructive the placement of the language added to section 916.45 as it was being renumbered and amended to assume its current form.[5]
At the time the Ryce Act was enacted, its jurisdictional provision read as follows:
Applicability of [the][A]ct
Sections 916.31-916.49 apply to all persons currently in custody who have been convicted of a sexually violent offense, as that term is defined in s. 916.32(8), as well as to all persons convicted of a sexually violent offense in the future.
§ 916.45, Fla. Stat. (Supp.1998). At its very next annual session, convened within weeks of the January 1, 1999 effective date of the Ryce Act, the legislature amended this provision to read "[t]his part applies to all persons currently in custody who have been convicted of a sexually violent offense, as that term is defined in s. 394.912(9), as well as to all persons convicted of a sexually violent offense and sentenced to total confinement in the future." Ch. 99-222, § 20, Laws of Fla. (emphasis added). Although the legislature could have made it incontestably clear that it was merely limiting the Ryce Act's scope by inserting the amending language "and sentenced to total confinement" after the word "convicted" in the second clause of the section and replacing the preposition "of" with "for," so that the clause would have read ". . . as well as to all persons convicted and sentenced to total confinement for a sexually violent offense in the future," it elected instead to insert the added language between the substantive phrase "sexually violent offense" and the prepositional phrase, "in the future." We presume the legislature understands the meaning of the language it uses and the implications of its placement in a statute. See, e.g., Rinker Materials Corp. v. City of N. Miami, 286 So.2d 552, 553 (Fla. 1973)("In statutory construction, statutes must be given their plain and obvious meaning and it must be assumed that the legislative body knew the plain and ordinary meanings of the words."); State ex rel. Bie v. Swope, 159 Fla. 18, 24, 30 So.2d 748, 751 (1947)("[t]he legislator is presumed to know the meaning of words and the rules of grammar . . ."); Sailboat Apartment Corp. v. Chase Manhattan Mortgage & Realty Trust, 363 So.2d 564, 568 (Fla. 3d DCA 1978)("[T]he legislature is presumed to know the meaning of words and the rules of grammar and the court will give the generally accepted construction to both the phraseology of the act and the manner in which it is punctuated."). In this case, we consider the legislature's placement of the amending language between the substantive phrase "sexually violent offense" and the prepositional phrase "in the future," evidence that the legislature had more in mind than a post-effective date reduction of the reach of the Ryce Act, the deductively unavoidable interpretation of the amended second clause sought by Ward.
Having thus concluded that the additional phrase "and sentenced to total confinement," as drafted and inserted into the Ryce Act by the legislature in 1999, does not ineluctably require the narrow interpretation pressed by Ward, we now *1147 turn to principles of statutory construction. Seagrave v. State, 802 So.2d 281, 286 (Fla.2001)(holding that in cases of uncertainty, courts frequently resort to traditional canons of statutory construction). We begin this examination by referring first to a recognized canon of grammatical statutory construction known as the doctrine of the last antecedent, which holds that "relative and qualifying words, phrases and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to, or including, others more remote." City of St. Petersburg v. Nasworthy, 751 So.2d 772, 774 (Fla. 1st DCA 2000). Because the legislature elected to insert the amending language into the statute as it did, immediately prior to the qualifying prepositional phrase "in the future," this canon impels us to conclude that the legislature intended the prepositional phrase "in the future" to modify the added language "and sentenced to total confinement" but not the remote phrase "sexually violent offense." Our belief that the 1999 amendment was intended to expand and harmonize the second clause with the first rather than reduce its reach is fortified by this analysis.

II.
If the analysis presented thus far is not sufficient, however, our examination of the interaction of the section of the Ryce Act under review here with other sections of the Ryce Act compels the conclusion we draw in this case. Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992)(in construing intent, courts must "give full effect to all statutory provisions and construe related statutory provisions in harmony with one another")(emphasis added). Although as Ward aptly points out, the purposes of the statute would be served by applying it, as the Baker Act is applied,[6] to all persons who are dangerous  i.e., all "sexual predators" as defined by the statute  the legislature, for reasons of its own, when it originally adopted the Ryce Act in 1998, elected to narrow the reach of those who could then be gathered in for care or treatment to those persons who were "currently in custody" on the effective date of the Ryce Act. See discussion at p. 4, supra. While it is arguable that the legislature selected a single "effective date" prism for purposes of subjecting to treatment those individuals who had at any time in the past committed a qualifying offense, were "in custody," and were placed in prison, we find that interpretation much less plausible and harmonious with a legislative intent that those who had earned a qualifying sexual offense in the past would be potentially subject to the Ryce Act if they were either in custody on January 1, 1999, or at some future date committed an act which resulted in their "total confinement." In fact, we find the notion argued by the petitioner in support of relief here that the legislature necessarily intended a single-day prism for purposes of gathering all past offenders to be rationally farfetched. Cf. Gordon, 839 So.2d at 716 n. 1 (stating that while the petitioner could not be committed under the "first clause" of section 394.925 because he was not in custody at the time the proceeding was commenced, "[t]he [Ryce] Act could be applicable to [him] in the future should he ever be sentenced to total confinement"); Tabor v. *1148 State, 864 So.2d 1171, 1174 (Fla. 4th DCA 2004)(stating in a "clause one" case that "Appellant's argument that his current incarceration must be as a result of a sexually violent offense is refuted by . . . other provisions of the Ryce Act . . . .").
Other provisions of the Ryce Act support this conclusion. For example, section 394.913 of the Ryce Act requires certain agencies, including the Florida Department of Corrections, Florida Department of Juvenile Justice, and Florida Department of Children and Families, who may have custody of a potential committee, to give notice and provide certain medical and other information to a multi-disciplinary team of health professionals for a determination of whether the person is a sexually violent predator within the meaning of the Ryce Act "at least 545 days prior to [ ] anticipated release" in the case of the Department of Corrections, or "180 days prior to [ ] anticipated release" in the case of the remaining agencies. § 394.913(1), Fla. Stat. (1999). The office of the state attorney must likewise be notified. Id. Notably, notice to the multi-disciplinary team and the state attorney is required not only for persons who have been convicted of a sexually violent offense in this state, but also those "persons [who] "ha[ve] never been convicted of a sexually violent offense in this state but [have] been convicted of a sexually violent offense in another state or in federal court . . . ." Id. (emphasis added). Section 394.913 clearly contemplates Ryce Act filings against individuals brought into custody in Florida after January 1, 1999, for a non-sexual offense where the qualifying sexual offense is a prior conviction in a non-Florida state court or a federal court anywhere in the United States. The interpretation of the second clause of section 394.925 pressed by Ward would render this portion of section 394.913(1) of the Florida Statutes meaningless. We decline to adopt such an interpretation. See Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)(noting that "courts should disfavor interpretations of statutes that render language superfluous"); Johnson v. Feder, 485 So.2d 409, 411 (Fla.1986)("Statutory interpretations that render statutory provisions superfluous `are, and should be, disfavored'.")(internal citation omitted); see also Tabor, 864 So.2d at 1173 ("Because [clause one] does not link current incarceration to [a] sexually violent crime, and expressly includes convictions for such crimes from jurisdictions other than Florida, we hold that the act does apply to appellant.")(emphasis added).
Secondly, we observe that the definitional section of the original version of the Ryce Act, § 916.32(10), Fla. Stat. (Supp. 1998), defined "total confinement" to include only persons "currently being held in any physically secure facility being operated or contractually operated for the Department of Corrections, the Department of Juvenile Justice, or the Department of Children and Family Services." However, during the course of the same 1999 session of the legislature, during which by our view the legislature set about expanding and harmonizing "clause one" and "clause two" of then section 916.45 of the Florida Statutes, the same legislature expanded the definition of "total confinement" to state that "total confinement" for the "purpose of person[s] serving an incarcerative sentence under the custody of the Department of Corrections or the Department of Juvenile Justice [shall include persons] being held in any other secure facility for any reason." § 394.912(10), Fla. Stat. (1999)(emphasis added). In our view, this is further evidence that the legislature was thinking expansively during the course of its consideration of the 1999 amendments to the Ryce Act. If the legislature wished *1149 to limit Ryce Act incapacitation proceedings based upon post-January 1, 1999 incarcerations solely to persons in "total confinement" for a qualifying sexually violent offense, we are confident the legislature knew how to, and could have economically done so. See, e.g., § 912.32(3), Fla. Stat. (Supp.1998)(limiting "Department" to mean only the Department of Children and Family Services); see also State v. Marshall, 695 So.2d 719, 724 (Fla. 3d DCA 1996), aff'd, 695 So.2d 686 (Fla.1997)(noting that "if the 1991 legislature wanted to eliminate, or limit, [duties required by it], the legislature knew very well how to revise or amend [the statute]").
Thirdly, in determining the effectiveness of the 1999 Ryce Act, the Florida legislature required the Department of Corrections to keep statistical track of individuals qualifying for the Ryce Act and specifically noted that "At a minimum, the information that must be collected and compiled for inclusion in the reports includes: whether the qualifying offense was the current offense or the prior offense . . . ." Ch. 99-222, § 27, at 1388, Laws of Fla. We see little utility in such a requirement if the legislature were of a view that "second clause" proceedings were limited to those persons who both were convicted of sexual violence after January 1, 1999, and were in confinement for that offense at the time the proceeding was initiated.

III.
We reach a final level of comfort that the scope of the second clause of the Ryce Act encompasses otherwise qualifying sexual offenders whether or not they are then incarcerated for a sexual or non-sexual offense through a consideration of both the history and purpose of the Ryce Act, and recent rule-making by the Florida Supreme Court with respect to the Ryce Act.
When the Ryce Act was adopted in May 1998, it was in response to a heinous crime that had been committed on a small child in Miami-Dade County, Florida. Our high court has found that the Ryce Act was intended to "serve[ ] the dual state interests of providing mental health treatment to sexually violent predators and protecting the public from these individuals," Westerheide v. State, 831 So.2d 93, 112 (Fla.2002), by enabling the state to bring into involuntary confinement for care and treatment those individuals who fall within "[that group of] small but extremely dangerous number of sexually violent predators" for whom the existing involuntary commitment programs may be inadequate but whose predilection for "engaging in repeat acts of predatory sexual violence is high." § 394.910, Fla. Stat. (Supp.1998). Some years earlier, our supreme court stated, "[t]he provisions of statutes enacted in the public interest," such as the Ryce Act which we here construe, "should be given a liberal construction in favor of the public." Dep't of Envtl. Regulation v. Goldring, 477 So.2d 532, 534 (Fla.1985). Although we believe a sound reading of the text and correct application of the rules of statutory construction impels the result we reach in this case, we also believe our construction of the statute comports with the history and purpose behind the Ryce Act.
In so concluding, we finally note that within the last several months, the Florida Supreme Court approved an amendment to Florida Rule of Criminal Procedure 3.172, requiring that a defendant who now or in the future pleads guilty to any offense be advised of the potentiality of a future Ryce Act proceeding, "if the defendant has been previously convicted of [a sexually violent] offense." In re Amendments to Fla. Rule of Crim. Procedure 3.172, 911 So.2d 763, 765 (Fla.2005)(emphasis added). This advice would amount to *1150 an incorrect statement of law and have no effect other than engendering unnecessary dread in defendants considering or making pleas if prior convictions for sexually violent offenses could not later be used as a basis for a Ryce Act action. Amended Rule 3.172 is consistent with our reading of the Ryce Act.
Because we find that section 394.925 authorizes the State to seek to involuntarily commit Ward for care and treatment under the Jimmy Ryce Act, we deny the writ. Nevertheless, because we consider this case to have significant statewide impact, we certify the following question to the Florida Supreme Court as one of great public importance pursuant to Article V, section 3(b)(4) of the Florida Constitution:
WHETHER A PERSON WHO WAS NOT IN CUSTODY ON JANUARY 1, 1999, IS ELIGIBLE FOR CIVIL COMMITMENT UNDER THE JIMMY RYCE ACT IF THAT PERSON WAS SENTENCED TO TOTAL CONFINEMENT AFTER JANUARY 1, 1999, BUT THE QUALIFYING CONVICTION OCCURRED BEFORE JANUARY 1, 1999.[7]
Petition denied.
ROTHENBERG, Judge (concurring).
I completely concur and join with Judge Shepherd's thorough, well-reasoned analysis and conclusion. I therefore write merely to note that to hold otherwise would result in a constitutional infirmity, a result clearly not intended by the legislature, and one which defies common sense.
The original version of the Ryce Act became effective on January 1, 1999. As originally enacted, section 916.45, Florida Statutes (Supp.1998), provides that the Ryce Act applies:
to all persons currently in custody who have been convicted of a sexually violent offense, as that term is defined in s. 916.32(8), as well as to all persons convicted of a sexually violent offense in the future.
On May 26, 1999, this particular section was renumbered as section 394.925 and modified to add the words "and sentenced to total confinement" to the second clause. As modified, section 394.925 provides that the Ryce Act applies:
to all persons currently in custody who have been convicted of a sexually violent offense, as that term is defined in s. 394.912(9), as well as to all persons convicted of a sexually violent offense and sentenced to total confinement in the future.
§ 394.925, Fla. Stat (1999)(emphasis added).
*1151 Section 394.912, Florida Statutes (1999), referred to above in the amended Act, is the definitional section of the Act. Section 394.912(9)(g) defines a "sexually violent offense" as including "any federal conviction or conviction in another state for a felony offense that in this state would be a sexually violent offense." Section 394.912(11), Florida Statutes (1999), defines "total confinement" as, among other things, "being held in any other secure facility for any reason." (emphasis added).
The Florida Supreme Court in Hale v. State, 891 So.2d 517 (Fla.2004), has already determined that the original version applies to all persons who were incarcerated for any offense at the time the Act became law if they had been previously convicted for a sexually violent offense in any state or federal court. It specifically held that since the original version of the Act did not link the current incarceration to a sexually violent offense, the legislature did not intend that it apply only to those persons currently in custody for a sexually violent offense. Hale, 891 So.2d at 522 ("We find that the Ryce Act does not require that the respondent['s] current incarceration be for a sexually violent offense.").
Ward asks us to conclude that, based upon the amendment, although he could be subjected to the Act if he had been previously convicted of a sexually violent offense and was incarcerated for any offense at the time it was passed, if he was not incarcerated when the amended Act became law, then the amended Act could only apply to him if he was convicted and incarcerated for a sexually violent offense in the future. This interpretation defies common sense and would unnecessarily render the amended Act unconstitutional. See generally Franklin v. State, 887 So.2d 1063, 1073 (Fla.2004)(holding that a statute "must be construed, if fairly possible, as to avoid unconstitutionality"); Cassady v. Consol. Naval Stores Co., 119 So.2d 35, 37 (Fla.1960)(holding that courts have a "duty to interpret a legislative Act so as to effect a constitutional result if it is possible to do so").
The amended Act, as Ward would have us interpret it, would be unconstitutional as it would provide for the disparate treatment of individuals who had the ill-fortune of being incarcerated (for any offense) at the time the amended Act was passed, versus those who were not confined when the amended Act became effective, but who were later convicted and confined. Ward's interpretation would have us treat individuals with a prior conviction for a sexually violent offense and incarcerated for a non-sexually violent offense at the time the amended Act became effective, harsher than those individuals with a prior conviction for a sexually violent offense, but not incarcerated at the time the amended Act became effective, if they commit a non-sexually violent offense in the future and are incarcerated. Thus, those individuals who commit non-sexually violent offenses in the future would not be subject to the amended Act pursuant to Ward's suggested interpretation, whereas others who were convicted of a non-sexually violent offense in the past and happened to be in custody at the time the amended Act passed, would. This is so despite the fact that those in confinement at the time the amended Act became effective had no notice that further confinement under the Ryce Act was possible, while those who were not incarcerated at the time that the amended Act was passed, were on notice that their subsequent conviction and incarceration, even for a non-sexually violent offense, could subject them to further confinement under the Ryce Act. Such an application would violate equal protection under both the Florida and the United *1152 States Constitutions and makes no sense whatsoever.
A plain reading of the amendment, when read in conjunction with section 394.912(9)(g), which defines sexually violent offense as including "any federal conviction or conviction in another state for a felony offense that in this state would be a sexually violent offense," and section 394.912(11), which defines "total confinement" as "being held in any secure facility for any reason," make it clear that the Act, as amended, is meant to apply to those persons currently convicted and serving sentences and those who are convicted and incarcerated in the future, whether or not the offense for which they are incarcerated for is a sexually violent one, as long as they have at some time in the past, been convicted of a sexually violent offense. This is the interpretation articulated by the Florida Supreme Court in Hale regarding the original version of the Act. The insertion of the words "and sentenced to total confinement" in the amended Act does not do violence to this interpretation. I submit that the amendment to the Act is simply a clarification of its application, to specifically limit its application to those persons incarcerated ("total confinement"), as opposed to those persons who have completed their sentences and have been released or are on some other form of supervision.
Thus, the amended Act would treat those individuals, subject to its application, exactly the same as those who fell under its umbrella in the original Act and treat all persons convicted of a prior sexually violent offense the same. Under either scenario, if a person has been convicted of an enumerated offense and is in total confinement for any purpose, he/she may be subject to the Act. Not only does this interpretation pass constitutional muster, it makes absolute sense.
COPE, C.J. (concurring in part, dissenting in part).
The question before us is how to interpret the portion of the Jimmy Ryce Act which defines who is eligible for civil commitment. See § 394.925, Fla. Stat. (2004). The statute is simple, and quite clear.
So far as pertinent here, an offender is covered by the Act if he is convicted by a qualifying offense after January 1, 1999, and is sentenced to total confinement for that offense. See id. Since the petitioner, Michael Ward, was not convicted of a qualifying offense after January 1, 1999, it follows that he is not covered by the Act and is entitled to have the civil commitment proceeding terminated. I therefore dissent on the merits but concur in certifying the question of great public importance.

I.
In 1976 petitioner-defendant Ward was adjudicated guilty (pursuant to a guilty plea) in four sexual battery cases. As explained in the majority opinion, he was imprisoned for those crimes and later released.
On January 1, 1999, the Jimmy Ryce Act took effect. The defendant was not in custody at that time.
In 2004 the defendant was sentenced to thirty-six months in prison for burglary of an unoccupied conveyance and possession of burglary tools. These were not sexual offenses and are not qualifying offenses under the Jimmy Ryce Act.
In January 2005, the State initiated civil commitment proceedings against the defendant under the Act. The State maintains that the defendant qualifies for civil commitment because of (a) his 1976 sexual battery convictions, and (b) the fact that he *1153 was incarcerated, albeit for a nonsexual offense, after January 1, 1999.
The defendant moved to dismiss and for immediate release. The defendant argued that under the Act, the 1976 sexual battery convictions do not count. The defendant contends that an offender qualifies for civil commitment ifand only ifhe is convicted of a qualifying offense after January 1, 1999, and incarcerated for that offense.
The trial court denied the defendant's amended motion to dismiss. The defendant has filed a petition for writ of prohibition, contending that he does not qualify for civil commitment as a matter of law.[8]

II
On January 1, 1999, the Jimmy Ryce Act went into effect. It created a civil commitment procedure for offenders who have been convicted of a qualifying sex crime and meet specified commitment criteria. See § 394.912(9)(10), Fla. Stat (2004).
The Act contained an "applicability" section which spelled out whom the Act covered. The first group  not involved in this appeal  consisted of persons in custody on January 1, 1999, who had been convicted of a qualifying offense. That provision is not applicable here because petitioner-defendant Ward was not in custody on January 1, 1999.
The second group is the one involved here. The original "applicability" section stated:
916.45 Applicability of act.  Sections 916.31-916.49 apply to all persons currently in custody who have been convicted of a sexually violent offense, as that term is defined in s. 916.32(8), as well as to all persons convicted of a sexually violent offense in the future.
§ 916.45, Fla. Stat. (Supp.1998) (emphasis added).
Under this language, an offender qualified if he was convicted of a sexually violent offense "in the future." The effective date of the Act was January 1, 1999, so "in the future" meant after January 1, 1999. Therefore an offender qualified for civil commitment if he was convicted of a sexually violent offense after January 1, 1999. The majority opinion and this opinion are unanimous on that point.
Defendant Ward was not convicted of a sexually violent offense after January 1, 1999. Under the original version of the Jimmy Ryce Act, the defendant did not qualify for civil commitment.

III.
In May, 1999, the legislature added new language to the "applicability" section. The issue in this case is how to interpret the amended statute.
The 1999 amendment added  using the word "and"  a second requirement for an offender to qualify for civil commitment: the defendant had to be sentenced to total confinement. As amended, the "applicability" section stated:
394.25 Applicability of act.This part applies to all persons currently in custody who have been convicted of a sexually violent offense, as that term is defined in s. 394.912(9), as well as to all persons convicted of a sexually violent offense and sentenced to total confinement in the future.
§ 394.25, Fla. Stat. (emphasis added). The Act already required that an offender *1154 had to be convicted of a qualifying offense after January 1, 1999. The Legislature simply added a second requirement: the defendant had to be sentenced to total confinement.
A dictionary definition of "and" states that it is "used as a function word to indicate connection or addition esp. of items within the same class or type; used to join sentence elements of the same grammatical rank or function." Webster's New Collegiate Dictionary 43 (1977).
The sentence elements here are:
Original Version
[convicted of a sexually violent offense] [in the future].
Amended Version
[convicted of a sexually violent offense] [and] [sentenced to total confinement] [in the future].
"And" means "and." Where previously there was one requirement (conviction after January 1, 1999), now there are two (conviction and total confinement), both of which must occur after January 1, 1999.
The defendant was not convicted of a qualifying crime after January 1, 1999. It follows that he is not eligible for civil commitment under the Act.

IV.
The majority opinion says that by adding new language to the statute, the Legislature changed the meaning of the already existing language. That is not correct.
The majority acknowledges that the eligible group was originally "all persons convicted of a sexually violent offense in the future," i.e., after January 1, 1999. The majority says that because the Legislature inserted new language before "in the future," it follows that the Legislature intended "in the future" to apply only to the new phrase, not the old phrase.
Respectfully, this is contrary to common understanding. The Jimmy Ryce Act already had an accepted meaning: that it applied to persons convicted of a qualifying offense after January 1, 1999. Under ordinary drafting practices, if the Legislature had wanted to change that part of the statute, it would have done so expressly and not by mere implication.
"Provisions of the original act or section which are repeated in the body of the amendment, either in the same or equivalent words, are considered a continuation of the original law." 1A Norman J. Singer, Statutes and Statutory Construction § 22:33, at 392 (2002).[9]

V
The majority opinion relies on the so-called doctrine (or rule) of the last antecedent, which is an aid to statutory construction. Majority opinion at 9-10. The majority opinion relies on that doctrine for the proposition that the phrase "in the future" in this case modifies only the phrase "sentenced to total confinement." The majority opinion is incorrect on that point.

A.
Professor LeClercq has explained the doctrine of the last antecedent as follows:
*1155 By the late 1880s, Jabez Sutherland, who wrote Sutherland on Statutory Construction, had grappled with enough legal ambiguity after investigating complicated and litigated statutes that he invented a grammar/punctuation rule in hopes of resolving future statutory problems:
Referential and qualifying phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence. This proviso usually is construed to apply to the provision or clause immediately preceding it. The rule is another aid to discovery of intent or meaning and is not inflexible and uniformly binding. Where the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent.
Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma.
Terri LeClercq, Doctrine of the Last Antecedent: The Mystifying Morass of Ambiguous Modifiers, 2 Legal Writing 81, 86-87 (1996) (footnote omitted; emphasis added) (quoting 1891 version of Sutherland on Statutory Construction).[10]
Professor LeClercq goes on to say that "the Doctrine of the Last Antecedent is problematic: it contradicts other linguistic principles; it contradicts the historical use of the comma; and the doctrine, itself poorly drafted, does not provide a concrete conclusion to the problem of ambiguous modifiers." LeClercq, supra, at 89. "Thus, rather than becoming `one more aid' in interpretation as Sutherland hoped, the Doctrine of the Last Antecedent has, in its hundred-plus year history, created as much confusion and disagreement as the ambiguous modifier its drafter set out to clarify." Id.[11]

B.
The doctrine of the last antecedent has been described by the United States Supreme Court as a rule of statutory construction which will be applied when it makes sense to do so, and will be ignored when it does not. Relying on Sutherland, *1156 the Court has said the rule of the last antecedent is one in
which a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows. . . . See 2A N. Singer, Sutherland on Statutory Construction § 47.33, p. 369 (6th rev. ed. 2000) ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent"). While this rule is not an absolute and can assuredly be overcome by other indicia of meaning, we have said that construing a statute in accord with the rule is "quite sensible as a matter of grammar."
Barnhart v. Thomas, 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003) (citation omitted; emphasis added). Compare id. (applying rule of the last antecedent) with Nobelman v. American Savings Bank, 508 U.S. 324, 330, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) (declining to apply rule of last antecedent and instead adopting an interpretation which "is the more reasonable one[.]"), and compare Miller v. Kase, 789 So.2d 1095, 1098-99 (Fla. 4th DCA 2001) (declining to apply doctrine of last antecedent) with Mallard v. Tele-Trip Co., 398 So.2d 969, 972 (Fla. 1st DCA 1981) (applying doctrine of last antecedent).
In this case the most relevant pronouncement is one by Justice Brandeis on behalf of the Supreme Court many years ago. "When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." Porto Rico Ry. v. Mor, 253 U.S. 345, 348, 40 S.Ct. 516, 64 L.Ed. 944 (1920). The rule of the last antecedent has no application here.

VI.
The majority opinion relies on a statement contained in In Re: Amendments to Florida Rule of Criminal Procedure 3.172, 911 So.2d 763, 765 (Fla.2005). This amendment adds a warning to be given in accepting pleas of guilty or nolo contendere, to warn the defendant regarding possible civil commitment consequences under the Jimmy Ryce Act. The majority reasons that this amendment to a procedural rule means that the Florida Supreme Court has already decided the substantive issue now before us.
The majority opinion's reasoning is incorrect. The law is well established that in adopting procedural rules, the court does not adjudicate substantive rights. See Ramos v. State, 505 So.2d 418, 421 (Fla.1987).
The concurring opinion takes the position that we are compelled to adopt the reading contained in the majority opinion, failing which the statute would be unconstitutional. The parties have made no such argument in this case. The State has defended the trial court's ruling on the basis of grammatical rules, not constitutional rules. If the constitutional issue were properly before us (which it is not), the Legislature is allowed to, and has a rational basis for, narrowing the group eligible for civil commitment if it wishes to do so.
The Legislature from the outset intended commitment under the Act to be targeted for a small group of dangerous individuals. See § 394.910, Fla. Stat. (2004). It is a legislative prerogative to decide how to define the group of eligible individuals.

VII.
In conclusion, the defendant is not eligible for commitment under the Act, and we should grant the petition for writ of prohibition. *1157 I concur in certifying the question of great public importance.[12]
NOTES
[1] The State contests whether we have jurisdiction to decide this issue. We determine we have jurisdiction under Article V, section 4(b)(3) of the Florida Constitution. See Atkinson v. State, 791 So.2d 537, 538 (Fla. 2d DCA 2001), aff'd, 831 So.2d 172 (Fla.2002).
[2] Ward was advised during his 1976 plea colloquy that if he went to trial and was found guilty on any of the four rape charges, he could receive the death penalty. In 1969, rape was a capital crime in Florida. In 1972, Florida's death penalty law was declared unconstitutional. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Accordingly, this court held that Ward was misadvised concerning the maximum penalty which could be imposed for the 1969 rapes and vacated his pleas. Ward, 433 So.2d. at 1222.
[3] As originally adopted, this provision lacked the phrase "and sentenced to total confinement." See § 916.45, Fla. Stat. (Supp.1998). In the 1999 session of the Florida legislature, it was inserted and the provision renumbered. See discussion, infra, at n. 5.
[4] Not surprisingly, the intra-section parallelism and uniformity that has been found to exist in section 394.925 is mirrored by the similarly parallel and uniform action of other sections of the Act on the two jurisdictional clauses of section 394.925. See, e.g., § 394.913, Fla. Stat. (1999)(requiring notice of anticipated release to the state attorney and a multi-disciplinary team appointed by the Florida Department of Children and Families of all potential committees under the Act)(emphasis added); § 394.9135, Fla. Stat. (1999)(providing that in the event the release of a potential committee becomes "immediate for any reason" and notice has not been given, the potential committee must in either case be transferred briefly to an appropriate secure facility so that the state may evaluate the individual on an expedited basis and consider the filing of a Ryce Act proceeding).
[5] As enacted in 1998, the Ryce Act appeared in chapter 916, which is entitled "Mentally Deficient and Mentally Ill Defendants." See §§ 916.31-916.49, Fla. Stat. (Supp.1998); Ch. 98-64, §§ 2-23, at 446-55, Laws of Fla. The 1999 amendment moved the Ryce Act to chapter 394, which is entitled "Mental Health." See Ch. 99-222, §§ 3-24, at 1373-87, Laws of Fla. The amendment to the scope of the Ryce Act was made at that time. Ch. 99-222, §§ 2-22, Laws of Fla.
[6] Like the Ryce Act, the Baker Act also authorizes involuntary commitment of individuals with significant, recognized, diagnosable infirmities that make them a danger to themselves and the community. See §§ 394.451-394.4789, Fla. Stat. (2005). The Ryce Act is intended to serve and incapacitate individuals for whom a Baker Act commitment is inappropriate or, at a minimum, less than optimal. See § 394.910, Fla. Stat.
[7] Because we are certifying this matter as one of great public importance, we note that there is a significant fact pattern not directly addressed by the dissent, namely one in which an individual (1) was convicted of the qualifying offense after January 1, 1999, (2) was incarcerated for that offense after January 1, 1999 and released, and (3) later incarcerated for a non-qualifying offense. We assume that the petitioner and the dissent would eschew Ryce Act jurisdiction over this individual while incarcerated for the second offense. See dissenting opinion, infra at 26-27, 33 n. 5. But for the timing, of course, this individual would have been a potential first clause committee. An affirmative answer to the certified question resolves this hypothetical case. It does not disturb us if, for example, the state elects to exercise its discretion against the commencement of a Ryce Act proceeding at one juncture and later makes a different discretionary decision. Discretionary calls are the daily fare of prosecutors. Nor, based upon our reading of the statute and its purpose, would we be disturbed if the state inadvertently missed its chance to commence a Ryce Act proceeding against such a hypothetical defendant during the first incarceration but elected to later proceed. We consider all of this to be within the contemplation of the Ryce Act as amended and not legally prohibited.
[8] The majority opinion correctly states that a petition for writ of prohibition is an available remedy where the defendant does not qualify for civil commitment under the Act as a matter of law. See majority opinion at 2 n. 1; Atkinson v. State, 791 So.2d 537, 538 (Fla. 2d DCA 2001), aff'd, 831 So.2d 172 (Fla.2002).
[9] The amendment at issue here stated:

394.925 916.45 Applicability of act.This part applies Sections 916.31 916.49 apply to all persons currently in custody who have been convicted of a sexually violent offense, as that term is defined in s. 394.912(9) s. 916.32(8), as well as to all persons convicted of a sexually violent offense and sentenced to total confinement in the future.
Ch. 99-222, § 20, Laws of Fla.
[10] The current version of Sutherland's doctrine appears in 2A Norman J. Singer, Statutes and Statutory Construction § 47:33, at 369-73 (6th ed.2000).
[11] Further:

Unfortunately for those who need to depend on it, the Doctrine of the Last Antecedent itself calls for interpretation because Sutherland begins with what seems the fall-back rule of statutory interpretation and concludes with his specific point. He begins with a qualifier, that interpreters should use the Doctrine of the Last Antecedent "where no contrary intention appears." Appears where? Within the phrase or within the document as a whole? In the notes of a committee that wrote the original rule? If the language offers no "contrary intention," then the meaning is already "plain." If the contrary intent shows up within the sentence itself, then there is no need for the rule. And legislative intent or the drafter's intent is usually in question to begin with, so that search rarely clarifies the sentence in question. But Sutherland's fifth sentence "where the sense of the entire act requires . . ." implies that the reader has already investigated the phrase within the context of the entire act. Thus the Sutherland rule is a jumble. He probably meant to emphasize intent, and the sense of the act as a whole, over the announced doctrine.
Id. at 92-93.
[12] One other aspect of the majority interpretation bears mention. The Act required review of all offenders who had a qualifying conviction and were in custody on January 1, 1999. In some instances the State reviewed an offender and decided not to file civil commitment proceedings. Such offenders were released upon expiration of the criminal sentence. If any such offender were reincarcerated on a nonsexual offense after January 1, 1999, then under the majority's analysis, that offender must once again be evaluated under the Act for possible civil commitmenteven though that offender has already been rejected as a candidate for civil commitment. It is illogical to suppose that the Legislature intended this result.