247 So.2d 755 (1971)
CITY OF OPA-LOCKA, Appellant,
v.
METROPOLITAN DADE COUNTY, the Board of County Commissioners, Acting As the Dade County Port Authority, et al., Appellees.
FIDELITY AND CASUALTY COMPANY OF NEW YORK, Appellant,
v.
METROPOLITAN DADE COUNTY, the Board of County Commissioners, Acting As the Dade County Port Authority, et al., Appellees.
Nos. 70-272, 70-334.
District Court of Appeal of Florida, Third District.
May 4, 1971.
Rehearing Denied June 4, 1971.
*756 Weintraub & Weintraub, Miami, for City of Opa-Locka.
Dixon, Bradford, Williams, McKay & Kimbrell, Miami, for Fidelity and Casualty Co. of New York.
Stuart L. Simon, County Atty., for Dade County.
William W. Gibbs, for Board of County Commissioners acting as Dade County Port Authority.
McCarthy, Steel, Hector & Davis, Miami, for Airway Hotel, Inc.
Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, for Shell Oil Co.
Walters, Moore & Costanzo, Miami, for Aviation Investments, Inc.
Batchelor, Brodnax, Guthrie & Kindred, Miami, for Miami Aviation Corp.
Bolles, Goodwin, Ryskamp & Ware, Miami, for Southern Airways of Fla.
Before PEARSON, C.J., and CHARLES CARROLL and SWANN, JJ.
PEARSON, Chief Judge.
These appeals are from a final judgment discharging an alternative writ of mandamus and dismissing the petition. The judgment did however, declare the rights of some of the numerous parties by a holding that a preliminary tax roll filed by the Dade County Tax Assessor was valid with the exception of the property interests of certain of the intervenors. A further provision of the judgment approved an opinion of the Dade County attorney, "as a general statement of guidelines to be utilized by the assessor in determining what property interests at airports managed and operated by the Dade County Port Authority are taxable, and the general method to be utilized in determining the value of such leasehold interests.[1]"
The appellants who have filed briefs are, the City of Opa-Locka, and the Fidelity and Casualty Company of New York. The only appellees filing briefs upon the merits are those situated within the boundaries of the City of Opa-Locka and the Board of County Commissioners of Dade County, acting as the Dade County Port Authority.[2] A brief statement of the proceedings in the trial court is necessary.
The City of Opa-Locka filed a petition for alternative writ of mandamus in December, *757 1968, in the Circuit Court of Dade County, seeking an order requiring the county tax assessor and county tax collector to assess and collect taxes for the years 1966, 1967, and 1968 on leasehold interests at the "Opa-Locka Airport." The respondent, Board of County Commissioners of Dade County, acting as the Dade County Port Authority filed its response alleging that no cause existed why the property interests created by such leases or other agreements, should not be assessed for ad valorem tax purposes for 1966, 1967, and 1968 in those instances where the premises were being used for a predominantly private purpose. The response further stated that these property interests should not be taxed in those instances in which the premises were being used for predominantly public purpose.
On January 29, 1969, the trial court entered its alternative writ of mandamus ordering the county manager, and the tax assessor, of Dade County, Florida to prepare a preliminary tax roll, of the proposed assessments for 1966, 1967, and 1968 on those entities using Dade County Port Authority lands primarily for private and profit making purposes, for presentation to the County Equalization Board.
The tax assessor filed the preliminary tax roll listing the tenants as exempt or taxable based upon Hillsborough County Aviation Authority v. Walden, Fla. 1968, 210 So.2d 193, and guidelines set forth in an opinion of the Dade County Attorney.
On February 17, 1970, the Circuit Judge entered the final judgment discharging the alternative writ of mandamus and dismissing the petition. This final judgment held the preliminary tax roll valid and proper in all respects with the exception of certain property interests held by the trial court to be non-taxable.
A portion of the Opa-Locka Airport, on which many of the tenants who are parties to this action are located, lies within the boundaries of the City of Opa-Locka, a municipal corporation. The Dade County tax assessor assesses the valuation of property interests for both the City and for Dade County. As a result of the failure of the assessor to assess, the City has not received any taxes pursuant to its ad valorem tax levy for the years 1966, 1967, and 1968 from the leasehold interest located on the Port Authority property lying within the city limits.
The City, in this cause, sought mandamus to compel the assessor to assess the value of the leasehold interest and to compel the tax collector to levy city ad valorem taxes on those leasehold interests lying within the city limits.
At the request of the tax assessor, the Dade County Attorney rendered an opinion establishing tax guidelines for the assessor to follow in assessing the value of the leasehold interests on Port Authority property and in granting tax exemptions from taxation to businesses located on the airport property. As a result of the alternative writ of mandamus, issued by the court, a preliminary tax roll was filed by the assessor. The preliminary tax roll exempted from ad valorem taxation, various businesses and leasehold interests on the basis of the "purpose" stated in the lease agreement between the Port Authority and the tenant.
Exemptions were granted to all leasehold interests where the lease agreement showed a business connected with aviation, which determination in the assessor's opinion was based upon:
"* * * the Legislature has declared which of the commercial enterprises carried on upon airport premises are primarily conducted in the public interest and which primarily served a private purpose. Those activities which directly relate to commercial aviation and without which an airport cannot function efficiently or successfully, fall within the ambit of the foregoing statutes and primarily serve a public or municipal purpose; those activities which are not related to aviation and which could be conducted equally well either on or off the *758 airport premises essentially serve a private purpose."
The City of Opa-Locka and the other appellants contested both the granting of the exemptions and the valuation of the leasehold interests.
The trial court ruled that because the Port Authority was given exclusive jurisdiction over the airport project lying within the boundaries of the municipality, that all taxable property interests at the airport operated by the Port Authority, and subject to ad valorem taxation, would not be subject to the levy of City of Opa-Locka ad valorem taxes.
As a result, the court found that the assessor was performing his duty in accordance with law and quashed the alternative writ and denied the appellant's request for mandamus. It is from this final judgment that the appellants appeal.
The appellant, City of Opa-Locka, has four points upon appeal. The first urges that if, as held by the trial court, F.S. § 196.25(2) (c), F.S.A., grants a tax exemption to the leasehold interest of those businesses engaged in aviation connected industries then the statute is unconstitutional. The appellant did not raise the issue of the constitutionality of F.S. § 192.62(c), F.S.A., in the trial court, we therefore decline to pursue that subject further. See Maeder v. Grayson, Fla.App. 1968, 222 So.2d 242. We must presume therefore that the appellant means to argue that the statute is susceptible to two interpretations and that we should choose the interpretation that is constitutional. cf Overstreet v. Blum, Fla. 1969, 227 So.2d 197.
Subsection (1) of F.S. § 192.62, F.S.A. provides that property otherwise exempt or immune from ad valorem taxation by reason of its ownership by a municipality, county or the state, loses such immunity if it is being used, occupied or controlled by a private party for a profit making venture under lease, loan, contract or option.
Subsection (2) of F.S. § 192.62, F.S.A., provides, however, that subsection (1) thereof shall not apply to property when:
"(a) The property is used exclusively for religious, scientific, municipal, educational, literary or charitable purposes;
* * * * * *
(c) The property is owned or used by the state, any county, municipality, or public entity or authority created by statute and is leased or otherwise made available to such person, firm, corporation, partnership or organization by such public body for a consideration in the performance by the public body of a public function or public purpose authorized by law, or which property prior to the effective date of this section was leased for valuable consideration for purposes not otherwise exempt hereunder;
* * * * * *
(f) The property is used by a corporation performing services of a public nature for the operation of its public utilities facilities thereon;"
The operation of airports by counties is clearly for a public purpose, as is the operation of airport facilities and projects. Chapter 22963, Laws of Florida, 1945, as amended, granting the Boards of County Commissioners of certain counties (including Dade County) additional powers to acquire and operate airports and airport facilities, states, in pertinent part, in Section 8:
"All powers, acts and deeds hereby conferred or authorized are hereby found to be and made a county purpose."
Chapter 22846, Laws of Florida, 1945, Chapter 332, Fla. Stat., authorizing counties and municipalities to acquire, operate, maintain and lease airports and airport facilities, also provides, in relevant part, in Section 3:
"The acquisition of any lands for the purpose of establishing airports or other air navigation facilities, * * * the acquisition, establishment, construction, *759 enlargement, improvement, maintenance, equipment, and operation of airports and other air navigation facilities, and the exercise of any other powers herein granted to municipalities [defined in the Act to include counties], are hereby declared to be public, government and municipal functions, exercised for a public purpose. * * *"
It is thus clear that the Legislature has declared the operation of airports and airport facilities to be municipal functions for a public purpose.
This legislative declaration has been judicially approved by the Supreme Court of Florida. See State v. County of Dade, Fla., 1968, 210 So.2d 200; State v. Okaloosa County Airport and Industrial Authority, Fla. 1964, 168 So.2d 745. We are not convinced by appellant's argument that there is any other reasonable way to interpret the statute.
The City's second point urges that the trial court erred in its determination that as a matter of fact that certain of the leaseholds were being used for a public purpose. The City's brief does not refer to any assignment of error under this point as required by FAR 3.7f(4), 32 F.S.A., and we have been unable to determine that it is covered by any assignment. Therefore, without further discussion, we find no error under the second point.
The City's third point is directed to a claimed error upon the trial judge's approval of a method of valuation as outlined in an opinion of the county attorney which was appended to the tax assessor's response to appellant City's petition for mandamus. The trial court did not have before it at the time of the entry of its final judgment, the question of the method of taxing the leasehold interests. This question had been stipulated between the parties to be decided after determination of the question relating to the granting of exemptions. Nevertheless, the lower court adopted the final paragraph of the county attorney's opinion as the method of properly assessing leasehold interests.
We are of the view that the trial judge went beyond issues raised by the pleadings when he entered the field of directives to the taxing authorities as to methods of taxation. The office of the court is to decide issues presented by the parties in particular cases. The intention to advise and approve the county authorities in the performance of their duties by the stipulations of the parties that the court should decide that issue should have been rejected by the court. We do not intend to infer by this statement that we have passed upon the opinion of the county attorney or that we have found it wanting, we simply decline to discuss the merits of the county attorney's opinion since it was not required for a proper decision of the issues before the court, nor is it required for a proper decision of the issue upon this appeal.[3]
The City's last point reaches the heart of the matter as far as the interests of the City are concerned. The trial judge held:
"3. Section 4 of Chapter 22963, Laws of Florida, 1945, as amended from time to time, and known as the Port Authority Act states:
`Any project owned or operated by such county and lying within the *760 boundaries of a municipality shall be under the exclusive jurisdiction of such county and shall be without the jurisdiction of said municipality.'
It therefore appears to the Court that all taxable property interests at the airports managed and operated by the Dade County Port Authority and subject to ad valorem taxation in 1966, 1967 and 1968 are subject only to such taxes as have been imposed by the County and are not subject to the levy of municipal ad valorem taxes."
The City challenges this conclusion as to municipal taxes in its fourth point. Chapter 22963, Laws of Florida, 1945, granted additional powers to counties having, or reaching, a population in excess of 260,000 and their respective Boards of County Commissioners. Thus the Dade County Port Authority is merely a name given to the Board of County Commissioners for administrative convenience. See Burton v. Dade County, Fla. 1964, 166 So.2d 445.
Section 4 of Chapter 22963, by amendment, Laws 1963, c. 63-836, provides, in relevant part:
"Any project owned or operated by such county and lying within the boundaries of a municipality shall be under the exclusive jurisdiction of such county and shall be without the jurisdiction of said municipality."
The word "project" is defined in Section 1(b) of Chapter 22963:
"The word `Project' shall embrace any one or any combination of two or more of the following, towit: * * * airport facilities of all kinds, including, but not limited to * * * warehouses, terminals, refrigerating and cold storage plants * * * facilities of all kinds for land and sea planes, including, but not limited to, landing fields, water areas for the landing and taking off of aircraft, hangars, shops, buses, trucks, and all other facilities for the landing, taking off, operating, servicing, repairing and parking of aircraft, and the loading and unloading and handling of passengers, mail, express and freight; * * *" Laws 1953, c. 28387
The language of Section 4 of Chapter 22963, quoted above, leaves no doubt as to the legislative intent. Exclusive jurisdiction over county owned airport facilities is vested in the county. That grant alone would have been sufficiently clear as to require no interpretation. In an abundance of caution, the Legislature added that such facilities "shall be without the jurisdiction" of said municipality. Appellants' argument does not convince us that the trial judge committed error in following the clear language of the statute. Tropical Coach Line, Inc. v. Carter, Fla. 1960, 121 So.2d 779.
The appellant, Fidelity and Casualty Company of New York owns a concession agreement between the Dade County Port Authority and the insurance company whereby the company is given an exclusive right for the sale of air trip insurance by and through vending machines and for the sale of certain other short term trip and other aviation insurance through counter sales. The company was allowed to intervene and filed a sworn response in lieu of taking testimony. As mentioned in the introductory portion of this opinion, the final judgment held the preliminary tax roll valid with the exception of certain property interests. The tax roll included a tax upon the insurance company's interest, and that interest was not excepted by the final judgment. It was therefore found taxable. On this appeal the appellant, Fidelity and Casualty Company of New York, urges that the court erred in finding its interest taxable.
The appellant relies upon F.S. § 624.0318, F.S.A., which provides as follows:
"624.0318 Preemption by state. 
(1) This state hereby preempts the field of imposing excise, privilege, franchise, income, license, permit, registration and similar taxes, licenses and fees upon insurers *761 and their agents and other representatives as such, as measured by premiums, income, or volume of transactions or in any other similar manner; and no county, city, municipality, district, school district or other political subdivision or agency in this state shall levy upon insurers, or upon their agents and representatives as such, any such tax, license or fee so measured additional to such as are levied by the legislature of Florida in this code; nor shall any such county, city, municipality, district, school district, or political subdivision or agency require of any such insurer, agent or representative, duly authorized or licensed as such under this code, any additional authorization, license, or permit of any kind for conducting therein transactions otherwise lawful under the authority or license granted under this code.
(2) This section shall not be deemed to prohibit taxes on real and tangible personal property located in this state, the municipal license taxes upon agents and solicitors authorized under § 624.0305, or the collection of taxes incurred because of operations prior to the effective date of this code."
We find from the record that this issue was properly raised in the sworn response. It may have been overlooked by the trial court. The County has not presented an argument upon the point. We know of no reason why the County's taxation of this insurance company's method of doing business does not fall within the prohibition of the statute quoted. Insurance companies are subject to a greater than ordinary supervision of their business activities because of the great public interest involved in their business. The legislature has seen fit to provide for their taxation in a particular way and to limit the application of other methods of taxation to businesses of this character. Of course this does not mean that the ordinary property of an insurance company may not be taxed but the tax we are here concerned with amounts to a tax upon the method by which the company sells insurance. We hold that the tax is invalid and reverse the judgment in that particular.
Having examined each point raised by the appellants and finding that they do not present reversible error except in the case of the appellant, Fidelity and Casualty Company of New York, we therefore affirm the judgment appealed except as to that portion thereof which approves the opinion of the County Attorney and we reverse the trial court's holding that the tax roll is valid as to the appellant, Fidelity and Casualty Company of New York. We direct that upon remand the trial court shall enter an amended final judgment omitting therefrom the approval of the county attorney's opinion, and as to the intervener, Fidelity and Casualty Company of New York, striking that company's interest in the concession agreement with the Dade County Port Authority from the tax rolls.
Affirmed in part and reversed in part and remanded.
CARROLL, Judge (concurring in part and dissenting in part).
I concur in the judgment of this court, except as to the feature of the opinion and judgment wherein this court stated it was not passing on the merits of the county attorney's opinion, setting out a basis for valuation for assessment of the taxable leasehold interests on the county airport property, which the trial court had approved and directed should be used. In the concluding paragraph of the opinion this court disapproved the portion of the trial court judgment which approved the opinion of the county attorney, and directed the trial court to amend its judgment to omit therefrom approval of the county attorney's opinion.
I view that treatment of the matter by this court to be inconsistent, because on the one hand the court indicates it is not passing on the merits of the county attorney's opinion in that respect, and on the other hand appears to reverse the judgment to the *762 extent that it approves the county attorney's opinion regarding valuation.
I agree with this court's rejection of the trial court's approval of the basis for valuation of such taxable leasehold interests as set out in the county attorney's opinion, but I feel if it is necessary to do that it is essential to deal with the question of the propriety of the method for valuation directed in the county attorney's opinion.
That opinion of the county attorney, numbered 68-90, furnished at the request of the tax assessor, included the statement that "we should assess the value of the leasehold interests [on the county airports] which primarily serve a private rather than public purpose." As to the basis for determining the valuation thereof for ad valorem taxation the county attorney's opinion stated as follows:
"Insofar as those airport leaseholds serving a commercial or private purpose primarily are concerned, you have asked us how to determine their value for assessment purposes. Their value should be determined by subtracting the rental amount actually being paid annually from the annual economic rent, which we define herein as the fair market value of the right to occupy and enjoy premises which a reasonable tenant willing to rent but under no obligation to rent would pay to a reasonable landlord willing to lease but under no compulsion to lease. The difference between the annual economic rent and the actual rental required to be paid per annum would constitute the value of the leasehold subject to ad valorem assessment for the year in question."
In my opinion that standard for valuation of such taxable leasehold interests is wrong, and clearly inadequate. It can readily be assumed it results in undervaluation and loss of tax revenue. For example, on that basis of valuation a leasehold interest which may have substantial taxable value must be considered by the assessor to have no value whatever for ad valorem taxation if the lessee is paying annual rental in an amount considered adequate.
Such a taxable property interest, like other taxable property should be assessed at its just valuation, according to the method required, upon consideration of the listed elements relating to value, as provided for in § 193.011 Fla. Stat., F.S.A. In my opinion the judgment of this court should have so held.
NOTES
[1] We are not presented with a procedural question on this appeal.
[2] This court in an order upon motions had ruled:

"This cause having come on for hearing upon the motions of appellee Dade County to strike portions of appellant's brief and to dismiss appellees, and the court having considered same, it is ordered that the motion to dismiss and its joinders are denied, the motion to strike and its joinders are granted; all statements, references, arguments and cases purporting to support the same, relating specifically to the tax liability of owners of leaseholds and leasehold interests in land or buildings situate without the boundaries of the City of Opa-Locka, and further, to strike from the record in this appeal all portions thereof, including documents, transcripts, exhibits and pleadings, or parts thereof, relating or referring specifically to leaseholds and leasehold interests in lands or buildings situate beyond the boundaries of the City of Opa-Locka, appearing in appellant's brief and record are stricken."
A petition for certiorari was filed in the Supreme Court of Florida seeking review of the above. Certiorari was denied by the Supreme Court upon a holding that it was without jurisdiction.
[3] We note in this connection that the trial judge specifically provided that his approval of the county attorney's opinion should not bind future proceedings. The following paragraph was included as the last paragraph of the final judgment.

"Nothing in this Final Judgment shall in any way mitigate or foreclose the right of any taxpayer to pursue his administrative remedy and complain to the Board of County Commissioners of Dade County, sitting as a Board of Equalization for 1966, 1967 and 1968, once the leasehold interests found taxable in this Final Judgment are quantitatively assessed by the Respondent Tax Assessor."