398 So.2d 969 (1981)
Robert A. MALLARD, Property Appraiser, Duval County, Florida, Appellant,
v.
TELE-TRIP COMPANY, a Corporation, Appellee.
No. VV-252.
District Court of Appeal of Florida, First District.
May 13, 1981.
*970 Dawson A. McQuaig, Grady W. Martin and William Lee Allen, Jacksonville, for appellant.
Robert C. Gobelman and Jack W. Shaw, Jr., of Mathews, Osborne, Ehrlich, McNatt, Gobelman & Cobb, Jacksonville, for appellee.
ERVIN, Judge.
The parties have asked us to determine whether an ad valorem tax on a leasehold interest of governmental property that is measured by income or volume of transactions assessed against an insurer or its agent by a local government is void, because this subject has been preempted by virtue of Section 624.520, Florida Statutes. Because we find that this statute does not preempt this type of tax, the summary judgment granted by the trial court in favor of the appellee, Tele-Trip Company, is reversed.
Tele-Trip entered into an air travel insurance concession agreement with the Jacksonville Port Authority, which is the corporate political entity that operates Jacksonville International Airport. Commencing December 1, 1977, the agreement permitted Tele-Trip to sell air travel insurance for a three-year period from an insurance counter and various machines at the airport.
Appellant, Robert A. Mallard, who is the Duval County Property Appraiser, informed Tele-Trip in 1978 that his office had determined the ad valorem tax assessment of the appellee's leasehold interest at the airport to be $83,000.00. After losing an appeal on this determination to the Duval County Property Appraisal Adjustment Board, Tele-Trip filed suit in circuit court. The appellee's contention was that it was exempt from any ad valorem tax based on Section 624.520(1), Florida Statutes (1971), which states:
624.520 Preemption by state. 
(1) This state hereby preempts the field of imposing excise, privilege, franchise, income, license, permit, registration and similar taxes and fees, measured by premiums, income, or volume of transactions, upon insurers and their agents and other representatives, and no county, city, municipality, district, school district, or other political subdivision or agency in this state shall impose, levy, charge or require the same, subject however to the provisions of subsection (2).
Tele-Trip stated its argument was reinforced by appellant's admission that the assessment was based on a capitalization of Tele-Trip's assumed minimum income. The minimum income figure was derived by using Tele-Trip's annual rental paid to the Jacksonville Port Authority. The agreement provided that Tele-Trip would pay $10,000 per year or 17% of the gross sales derived from over-the-counter sales (whichever is greater), and in addition, pay 13% of the gross premiums on all machine insurance sales.
Tele-Trip advocated the view that the tax was measured by income or volume of transactions. Therefore, the tax was preempted by the statute set out above.[1] Tele-Trip cited City of Opa-Locka v. Metropolitan Dade County, 247 So.2d 755 (Fla. 3rd DCA 1971), reh. denied, in which the court struck down an ad valorem tax on the leasehold interest of an insurance company *971 at the publicly owned Opa-Locka Airport.[2] The tax in that case was computed in part by considering the annual rental amount being paid by the company. The trial judge below agreed with Tele-Trip and granted summary judgment. We reverse.
While the City of Opa-Locka case is factually very similar, it involved the assessment and collection of taxes for 1966, 1967 and 1968. The all-encompassing rule in that case is no longer applicable because the tax law of this state has changed considerably since that time. Article VII, Section 10(c), Florida Constitution of 1968, is indicative of the change in the law. This section provides for the taxation of leasehold interests held by private interests on certain capital projects constructed with funds from the sale of revenue bonds floated by a local governmental entity. The court in City of Opa-Locka, supra, never considered this constitutional provision, because the contested tax assessments involved were for years prior to the approval of Article VII, Section 10(c). See Dade County v. Pan American World Airways, Inc., 275 So.2d 505, 517 n. 10 (Fla. 1973) (Ervin, J., dissenting), reh. denied.
In reference to the case at bar, the most relevant change in the law, since the City of Opa-Locka decision, is evidenced by the tax statutes which were substantially amended by the legislature in 1971. As a part of the comprehensive alterations enacted into law, the legislature created Section 196.001(2), Florida Statutes, mandating the taxation of leasehold interests in real property, and Section 196.199(2), Florida Statutes, which provides an exemption from the taxation of leasehold interests in real property. See Laws of Florida, Chap. 71-133, §§ 11 and 16. Similarly, Section 624.520, Florida Statutes, was also created by transferring it from another section, as part of the 1971 statutory revision process. Therefore, City of Opa-Locka, supra, is not applicable to the case at bar.
Section 196.001(2), Florida Statutes (1971), states that, unless expressly exempted by statute, "All leasehold interests in property of ... any political subdivision, municipality, agency, authority, or other public body corporate of the state" shall be subject to taxation. "While subsection two does not expressly state that a lease from a governmental body is a real property interest for ad valorem tax purposes, this is a necessary conclusion which must be drawn since subsection two mandates that governmental leases, not used for public purposes, be taxed." First National Bank of Birmingham v. Department of Revenue, 364 So.2d 38, 39 (Fla. 1st DCA 1978), reh. denied, appeal dismissed 368 So.2d 1366 (Fla. 1979); see also, St. John's Associates v. Mallard, 366 So.2d 34 (Fla. 1st DCA 1979), writ discharged, 373 So.2d 912 (Fla. 1979).
The effect of this statute is to place the holders of leases of publicly owned real property on a parity with real property owners in the private sector. Walden v. Hillsborough County Aviation Authority, 375 So.2d 283, 285 (Fla. 1979), reh. denied; Williams v. Jones, 326 So.2d 425, 430 (Fla. 1975);, reh. denied (1976), appeal dismissed 429 U.S. 803, 97 S.Ct. 34, 50 L.Ed.2d 63. Therefore, holders of leases of publicly owned lands are required to bear their fair share of the tax burden, unless specifically exempted. First National Bank of Birmingham, supra, at 40; Williams, supra, at 430. In Walden, supra, at 285, the Florida Supreme Court noted that the only exemption to Section 196.001(2), Florida Statutes, is specified in Section 196.199(2), Florida Statutes, which permits an exemption, if the lessee serves or performs a governmental, municipal, or public purpose or function. On appeal, Tele-Trip does not contend that it falls within this exception. The tax assessed against Tele-Trip is, therefore, not only proper; it is mandatory.
In our opinion, a review of the grammar and punctuation utilized by the legislature in Section 624.520(1), Florida Statutes *972 (1971), seems to militate against the view advocated by Tele-Trip. The statute preempts the imposition of certain taxes and fees upon insurers and their agents. The list of taxes and fees includes "excise, privilege, franchise, income, license, permit, registration and similar taxes and fees, measured by premiums, income, or volume of transactions... ." § 624.520(1), Fla. Stat. (1971). "[U]nder the `doctrine of the last antecedent,' relative and qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to or including others more remote." Quindlen v. Prudential Insurance Company of America, 482 F.2d 876, 878 (5th Cir.1973), reh. denied; 82 C.J.S. Statutes § 334.
In the statute at bar, it is apparent that the clause "measured by premiums, income, or volume of transactions" is a clause that qualifies or limits. Applying the "doctrine of the last antecedent," there can be little doubt that the clause applies only to the enumerated taxes and fees, including "excise, privilege, franchise, income, license, permit, registration and similar taxes and fees." Quite obviously, ad valorem taxes are not included within the list of enumerated taxes. The seven enumerated taxes and fees are followed by the clause "and similar taxes and fees." We must determine whether an ad valorem tax on a leasehold interest in real estate is a tax "similar" to the seven categories of taxes and fees.
The principle of ejusdem generis is relevant. "Under this rule, where the enumeration of specific things is followed by a more general word or phrase, the general phrase is construed to refer to a thing of the same kind or species as included within the preceding and more confining terms." Halifax Area Council on Alcoholism v. City of Daytona Beach, 385 So.2d 184, 187 (Fla. 5th DCA 1980); Soverino v. State, 356 So.2d 269 (Fla. 1978). If the legislature had intended general words such as "similar taxes" in Section 624.520, Florida Statutes, to be used in an unrestricted sense, it would not have mentioned a specific class of taxes in the statute. Soverino, supra, at 273; see also, 2A Sutherland Statutes and Statutory Construction, § 47.17, et seq.
An ad valorem tax is definitely not of the same "species" as an excise, privilege, franchise, income, license, permit, or registration tax. This is indicated by Hi-Octane Terminal Company v. Panama City, 164 So.2d 39, 40-41 (Fla. 1st DCA 1964), in which this Court cited a discussion on this issue by the Florida Supreme Court in City of DeLand v. Florida Public Service Co., 119 Fla. 804, 161 So. 735 at 738 (1935) (emphasis supplied):
All taxes, other than polls, are either direct or indirect property taxes. A direct tax is one that is imposed directly upon property, according to its value. It is generally spoken of as a property tax or an ad valorem tax. An indirect tax is a tax upon some right or privilege, or corporate franchise, and is most often called an excise or occupational tax.
An excise and property tax, when the two approach each other, ordinarily may be distinguished by the respective methods adopted for laying them and fixing their amounts. If a tax is imposed directly by the Legislature without assessment, and its sum is measured by the amount of business done, income previously received, or by the extent to which a taxable privilege may have been enjoyed or exercised by the taxpayer, irrespective of the nature or value of such taxpayer's assets or his investments in business, it is to be regarded as an excise tax. But, if the tax is computed upon the valuation of the property, and assessed by assessors, either where it is situated or at the owner's domicile, although privileges may be included in the valuation, it is considered a property tax.
Perhaps even more indicative of the legislature's intended scope of Section 624.520 is its usage of the word "preemption." Words of common usage, when used in a statute, should be construed in the plain and ordinary sense. See Pedersen v. Green, 105 So.2d 1 (Fla. 1958); 30 Fla.Jur., Statutes, § 87 (1974). Webster's Third New *973 International Dictionary (1976) defines the word "preemption" as meaning "[t]o seize upon to the exclusion of others: to take for oneself: appropriate." Roget's International Thesaurus (4th ed. 1974) lists the word "preempt" under the generic term "taking", and under the subgeneric term "appropriate". Also listed under the word "appropriate" are the synonyms "take for oneself", "pre-possess", "conquer", "monopolize", and "possess oneself of." This grouping indicates that the word "preempt" connotes more than just the act of taking away; it connotes also the ability of an entity to possess and use that which is taken. Such a connotation is also consistent with examples given in Black's Law Dictionary (5th ed. 1979) as to how the word has been used in a legal context.
Thus, the legislature, by enacting Section 624.520, cannot constitutionally "preempt" the counties from levying ad valorem taxation. Article VII, Section 1(a), Florida Constitution of 1968 provides:
No state ad valorem taxes shall be levied upon real estate or tangible personal property. All other forms of taxation shall be preempted except as provided by general law. (e.s.)
Article VII, Section 9, further provides:
Counties, school districts, and municipalities shall... be authorized by law to levy ad valorem taxes.
Article VII, Section 9, by the use of the mandatory word "shall", appears to mandate the legislature to authorize only the counties the power to levy ad valorem taxes. Compare Tascano v. State, 393 So.2d 540 (Fla. 1980) (reh. den., February 27, 1981). Hence, it does not appear that the legislature has the power to revoke the counties' authority to levy such taxes in part or in full. Even if the legislature has the power to take away or restrict a county's ability to levy ad valorem taxes, it cannot "preempt" that power because it is prohibited from exercising the power itself by virtue of Article VII, Section 1(a). Therefore, it cannot be assumed that the legislature intended to include ad valorem taxation within the species of taxes preempted by Section 624.520. A statute should be construed, if possible, to avoid a conclusion that is unconstitutional, Knight & Wall Co. v. Bryant, 178 So.2d 5 (Fla. 1965) (cert. den., 383 U.S. 958, 86 S.Ct. 1223, 16 L.Ed. 301), so as to avoid absurd results. Sharon v. State, 156 So.2d 677 (Fla. 3d DCA 1963). Therefore, an ad valorem tax is not preempted by Section 624.520, Florida Statutes.
Finally, if one looks at the appellant's use of the capitalization of Tele-Trip's assumed minimum income in preparing the leasehold interest's ad valorem tax assessment, it is apparent that such method of assessment has nothing to do with an income tax, or a tax measured by income, or the volume of transactions as defined in Section 624.520. This is because Section 193.011 specifies that in computing the just valuation of ad valorem property a "property appraiser shall take into consideration the following factors: ... (7) The income from said property... ." The Supreme Court has recognized that although a property appraiser may not have the property owner's actual income figures, if he has such data as would aid in determining the assessment, he would be remiss if he did not consider it. Palm Corporation v. Homer, 261 So.2d 822, 823 (Fla. 1972), reh. den., on remand, 264 So.2d 120 (Fla. 3d DCA 1972); see also, Cassaday v. McKinney, 296 So.2d 94, 96 (Fla. 2d DCA 1974). The use of the minimum rent by the appellant in computing the assessment on Tele-Trip's leasehold interest is not inconsistent with Section 624.520, and it is entirely consistent with Section 193.011.
Reversed and remanded for further proceedings consistent with this opinion.
BOOTH and JOANOS, JJ., concur.
NOTES
[1] The parties have at no time contended that Tele-Trip is not an "insurer" or an "agent" of an insurer within the meaning of Section 624.520(1), Florida Statutes (1971). The record reveals that Tele-Trip is a wholly owned subsidiary of Mutual of Omaha Insurance Company.
[2] City of Opa-Locka, supra, involved Section 624.0318, Florida Statutes. It has since been repealed. The statute was the apparent predecessor to Section 624.520, Florida Statutes (1971). The wording of that statute was similar to Section 624.520, Florida Statutes.