986 So.2d 479 (2008)
Michael WARD, Petitioner,
v.
STATE of Florida, Respondent.
No. SC06-1764.
Supreme Court of Florida.
January 17, 2008.
As Revised on Denial of Rehearing July 3, 2008.
Bennett H. Brummer, Public Defender, and Roy A. Heimlich, Assistant Public Defender, Eleventh Judicial Circuit, Miami, FL, for Petitioner.
Bill McCollum, Attorney General, Tallahassee, Florida, and Celia Terenzio, Bureau Chief, and Sue-Ellen Kenny, Assistant Attorneys General, West Palm Beach, FL, for Respondent.
*480 QUINCE, J.
This case is before the Court for review of the decision of the Third District Court of Appeal in Ward v. State, 936 So.2d 1143, 1144 (Fla. 3d DCA 2006). In its decision the district court ruled upon the following question, which the court certified to be of great public importance:
WHETHER A PERSON WHO WAS NOT IN CUSTODY ON JANUARY 1, 1999, IS ELIGIBLE FOR CIVIL COMMITMENT UNDER THE JIMMY RYCE ACT IF THAT PERSON WAS SENTENCED TO TOTAL CONFINEMENT AFTER JANUARY 1, 1999, BUT THE QUALIFYING CONVICTION OCCURRED BEFORE JANUARY 1, 1999.
Id. at 1150. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons explained below, we answer the question in the affirmative and approve the decision below.

FACTS AND PROCEDURAL HISTORY
Michael Ward pled guilty to two separate acts of rape in 1969 and two more in 1976. Ward, 936 So.2d at 1144. In 1983, the Third District reversed the 1969 convictions because counsel had misadvised Ward about the consequences of his guilty plea. See Ward v. State, 433 So.2d 1221, 1223 (Fla. 3d DCA 1983). Ward was released from prison on the 1976 offenses in 1993. Ward, 936 So.2d at 1144. In January 2004, Ward was sentenced to thirty-six months in state prison for burglary of an occupied conveyance and possession of burglary tools. Id. No sexual offense was involved in the burglary charge.
In January 2005, the State filed a petition in circuit court seeking Ward's involuntary commitment as a sexually violent predator under the Jimmy Ryce Act (the Act). In re Ward, No. 05-1287 CA32 (Fla. 11th Cir. Jan. 19, 2005).[1] Ward moved to dismiss the petition on the ground that the Act did not authorize either the institution of the commitment proceeding or the commitment sought because he had not been in custody on January 1, 1999, and had not been convicted of any sexually violent offense since the effective date of the Act. In re Ward, No. 05-1287 CA32 (Fla. 11th Cir. Mar. 1, 2005). The trial court ruled that a person incarcerated after the effective date of the Act for an offense not defined as a sexually violent offense, but who had been convicted previously of a sexually violent offense and had been released at the end of his sentence prior to January 1, 1999, is subject to involuntary commitment under the Act. State v. Ward, No. 05-1287 CA32, 2005 WL 697420 (Fla. 11th Cir. Mar. 16, 2005). The trial court also held that the Act applies "to people who are currently incarcerated even for a non-sexual offense and who have been previously convicted for a sexually violent offense." Id. The court also concluded that the Act applies to any person who has ever been convicted of a sexually violent crime and who is thereafter incarcerated for any crime not defined as a sexually violent offense as long as that person is "currently incarcerated when the petition for civil commitment is filed." Id.
Ward petitioned the Third District for a writ of prohibition, arguing that the trial court lacked jurisdiction to proceed because he was not in custody for a sexually violent offense as that term is defined under the Act. Ward, 936 So.2d at 1144. The district court ruled that "under the better reading and interpretation of this section," *481 an individual is subject to the Act "whatever may have been the reason for their qualifying confinement." Id. at 1145. Although the district court denied the writ, it certified the question to this Court as one of great public importance. Id. at 1150.
We granted review without argument and also granted Ward's motion for a stay of his commitment proceedings pending our review of his case.

ANALYSIS
As enacted by the Legislature in chapter 98-64, Laws of Florida, the Jimmy Ryce Act was applicable "to all persons currently in custody who have been convicted of a sexually violent offense ... as well as to all persons convicted of a sexually violent offense in the future." Ch. 98-64, § 17, at 454, Laws of Fla. (codified at § 916.45, Fla. Stat. (Supp.1998)). The Act became effective on January 1, 1999. Thus, the civil commitment procedure created by the Act applied to all persons in custody on January 1, 1999, who had been convicted of a sexually violent offense and all persons who are convicted of a sexually violent offense in the future.
In May 1999, the applicability provision was amended, in pertinent part, to provide that the Act applies "to all persons currently in custody who have been convicted of a sexually violent offense ... as well as to all persons convicted of a sexually violent offense and sentenced to total confinement in the future." Ch. 99-222, § 20, at 1385, Laws of Fla. (codified at § 394.925, Fla. Stat. (1999)). As defined in the Act, "total confinement" means that the person is currently being held in a secure facility operated by the Department of Corrections (DOC), the Department of Juvenile Justice (DJJ), or the Department of Children and Family Services, or is serving an incarcerative sentence under the custody of DOC or DJJ and is being held in any other secure facility. § 394.912(11), Fla. Stat. (1999). Thus, total confinement means that the person is in state custody.
As amended in 1999, the Act applies in two different circumstances. Under the first clause of section 394.925, the Act applies to all persons in custody on the effective date of the Act, January 1, 1999, who have been convicted of a sexually violent offense. Under the second clause, it applies to those persons who were not in custody on the effective date if they have been convicted of a sexually violent offense and they are sentenced to total confinement after the effective date of the Act, i.e., "in the future." Ward contends that both of the requirements in the second clause of section 394.925 must occur in the future. The State, consistent with the rulings of the trial court and the Third District, contends that the statute only requires that the total confinement occur in the future and that the conviction of a sexually violent offense may have occurred in the past and need not be the basis of the individual's current confinement.
The intent of the Legislature must guide our interpretation of statutory language. That intent must be determined primarily from the language of the statute. Hale v. State, 891 So.2d 517 (Fla.2004); Miele v. Prudential-Bache Sec., Inc., 656 So.2d 470, 471 (Fla.1995). In Hale, we reviewed a case involving an involuntary commitment under the pre-1999 amendment version of the Act. Pertinent to the instant case, Hale claimed that the Act was not applicable to him because he was not currently incarcerated for a sexually violent offense, as defined in the statute. Hale admitted that at some time in the past he had been convicted of a sexually violent offense enumerated in the statute. At the time the State filed the petition seeking his commitment under the Act, *482 however, Hale was incarcerated for dealing in stolen property. This Court concluded that "the Act applies to all persons who are currently incarcerated and who at some point in the past have been convicted of a sexually violent offense." 891 So.2d at 522.
We based our decision in Hale on the plain language of the applicability statute, which "says nothing about whether the person must be currently incarcerated for [the sexually violent] offense," "does not state that it applies to all persons currently in custody for a sexually violent offense," and "does not otherwise link the current incarceration to the sexually violent offense." Id. at 521. We were also persuaded that this was the correct interpretation based on other sections of the Act. For example, we noted that the statute defines a "sexually violent offense" to include federal convictions or convictions from another state. See § 916.32(8)(g), Fla. Stat. (Supp.1998) (renumbered as § 394.912(9)(g), Fla. Stat. (1999)). A person in custody in Florida whose only conviction for a sexually violent offense is from another jurisdiction would not be "in custody" in Florida for a sexually violent offense. Thus, the Legislature need not have included out-of-jurisdiction convictions in the statutory definition of a sexually violent offense if it intended the Act to apply only to those persons whose current incarceration involved a sexually violent offense. Hale, 891 So.2d at 521-22; see also Tabor v. State, 864 So.2d 1171, 1174 (Fla. 4th DCA 2004) (holding that Ryce Act does not require that current incarceration be for a sexually violent offense and cited with approval in Hale). Accordingly, we concluded that the Act applied to all persons who were currently incarcerated and who at some point in the past had been convicted of a sexually violent offense. Hale, 891 So.2d at 522. We explained that this construction "give[s] effect to all statutory provisions and construe[s] related statutory provisions in harmony with one another." Id. (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla. 1992)).
Although Hale involved the first clause of the applicability statute (i.e., those in custody at the time the Act took effect) and involved the pre-1999 version of the Act, we find our reasoning in Hale applicable to the instant case. The statutory definition of a sexually violent offense applies to both clause one and clause two of section 394.925 and still includes federal convictions and convictions in other states. See § 394.912(9)(g) (defining "sexually violent offense" as including "any federal conviction or conviction in another state for a felony offense that in this state would be a sexually violent offense"). Thus, the reasoning in Hale is equally applicable to a commitment under clause two of the applicability provision.
In its opinion in Ward, the Third District pointed out a number of statutory provisions in the Act that support the interpretation that the current confinement need not be for a sexual offense as long as the individual has been convicted of a sexually violent offense sometime in the past. See Ward, 936 So.2d at 1147-49. We agree that these other provisions of the Act, when read together with section 394.925, "lead to the conclusion that the legislature did not intend that the [amended] Act apply only to persons currently incarcerated for sexually violent offenses." Hale, 891 So.2d at 521.
Section 394.913(1) requires the agency having custody of an individual to give notice and information to the state attorney and to the multidisciplinary team responsible for determining whether the person meets the definition of a sexually *483 violent predator under the Act. This notice is required not only for persons who have been convicted of a sexual offense in Florida, but also for those whose qualifying sexual offense was a prior conviction in another state or in a federal court. The 1999 amendment also expanded the definition of "total confinement" in section 394.912(10) to include those serving an incarcerative sentence under the custody of DOC or DJJ or being held in any other secure facility for any reason. The 1999 amendment also included a requirement for DOC to collect information and compile quarterly reports of those individuals meeting the criteria and being referred pursuant to the Act. Ch. 99-222, § 26, at 1388, Laws of Fla. The required information includes "whether the qualifying offense was the current offense or the prior offense." Id. This requirement indicates a legislative intent that either the current or a prior sexually violent offense could be the qualifying offense that makes an individual subject to the Act.
Finally, as the Third District noted in its decision below, this Court's amendment to Florida Rule of Criminal Procedure 3.172(c), involving the determination of the voluntariness of a plea, evidences a recognition that an individual is subject to the Act even if his current confinement does not involve a sexually violent offense. See In re Amendments to Fla. Rules of Crim. Pro. 3.172, 911 So.2d 763 (Fla.2005). This Court adopted a new rule requiring a trial judge to inquire whether a defendant understands that his plea to a sexually violent offense or any plea if he "has been previously convicted of such an offense" may subject him to involuntary commitment as a sexually violent predator under the Act. Id. at 765; see also Fla. R.Crim. P. 3.172(c)(9). If a prior conviction could not be the basis for commitment under the Act, there would be no need for this language. In fact, as the Third District noted, "[t]his advice would amount to an incorrect statement of law and have no effect other than engendering unnecessary dread in defendants considering or making pleas if prior convictions for sexually violent offenses could not later be used as a basis for a Ryce Act action." Ward, 936 So.2d at 1149-50.
We also note that there are several problems with the statutory interpretation urged by Ward. First, it would render section 394.912(9)(g), defining a sexually violent offense as including a federal conviction or a conviction in another state, a nullity. Second, there is no rational basis to classify potential sexually violent predators differently based on whether they were incarcerated on the effective date of the Act. The purpose of the Act is to remove the threat posed to society by sexually violent predators by means of involuntarily committing them to long-term care and treatment facilities. This purpose is served equally when the Act is applied to those individuals who were in custody on its effective date and who had been convicted of a sexually violent offense in the past, see Hale, and when the Act is applied to those individuals who were not in custody on the effective date but have also been convicted of a sexually violent offense in the past. Classification as a sexually violent predator does not rest on the vagaries of whether an individual was in custody on the date the Act became effective.

CONCLUSION
Accordingly, based on the other provisions of the statute and our opinion in Hale, we agree with the Third District's interpretation of the applicability of the Act and answer the certified question in the affirmative. Thus, we also agree with the Third District that Ward was subject *484 to the Act based on his prior convictions for sexually violent offenses and his current confinement in state custody. Based on this conclusion, we lift the stay on Ward's commitment proceedings in the circuit court and remand this matter for further proceedings consistent with this opinion.
It is so ordered.
LEWIS, C.J., and WELLS, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., dissents with an opinion, in which PARIENTE, J., concurs.
ANSTEAD, J., dissenting.
If there is one rule of statutory construction that this Court has honored in so many instances as to make citation unnecessary, it is the rule that we must utilize the plain wording of a statute to determine its meaning. The dissenting opinion[2] of Chief Judge Cope in the district court constitutes a flawless and textbook example of applying that rule here. In addition, an analysis of legislative history also supports Judge Cope's conclusion. For those reasons, and because I believe the majority opinion clearly violates this controlling rule of construction and ignores legislative history, I dissent.

Judge Cope's Opinion
I would quash the decision under review and adopt Judge Cope's opinion in full as properly construing the meaning of the statute in question:
The question before us is how to interpret the portion of the Jimmy Ryce Act which defines who is eligible for civil commitment. See § 394.925, Fla. Stat. (2004). The statute is simple, and quite clear.
So far as pertinent here, an offender is covered by the Act if he is convicted by a qualifying offense after January 1, 1999, and is sentenced to total confinement for that offense. See id. Since the petitioner, Michael Ward, was not convicted of a qualifying offense after January 1, 1999, it follows that he is not covered by the Act and is entitled to have the civil commitment proceeding terminated. I therefore dissent on the merits but concur in certifying the question of great public importance.
I.
In 1976 petitioner-defendant Ward was adjudicated guilty (pursuant to a guilty plea) in four sexual battery cases. As explained in the majority opinion, he was imprisoned for those crimes and later released.
On January 1, 1999, the Jimmy Ryce Act took effect. The defendant was not in custody at that time.
In 2004 the defendant was sentenced to thirty-six months in prison for burglary of an unoccupied conveyance and possession of burglary tools. These were not sexual offenses and are not qualifying offenses under the Jimmy Ryce Act.
In January 2005, the State initiated civil commitment proceedings against the defendant under the Act. The State maintains that the defendant qualifies for civil commitment because of (a) his 1976 sexual battery convictions, and (b) the fact that he was incarcerated, albeit for a nonsexual offense, after January 1, 1999.
The defendant moved to dismiss and for immediate release. The defendant argued that under the Act, the 1976 *485 sexual battery convictions do not count. The defendant contends that an offender qualifies for civil commitment ifand only ifhe is convicted of a qualifying offense after January 1, 1999, and incarcerated for that offense.
The trial court denied the defendant's amended motion to dismiss. The defendant has filed a petition for writ of prohibition, contending that he does not qualify for civil commitment as a matter of law. [n. 8]
[N. 8.] The majority opinion correctly states that a petition for writ of prohibition is an available remedy where the defendant does not qualify for civil commitment under the Act as a matter of law. See majority opinion at 480 n. 1; Atkinson v. State, 791 So.2d 537, 538 (Fla. 2d DCA 2001), aff'd, 831 So.2d 172 (Fla.2002).
II
On January 1, 1999, the Jimmy Ryce Act went into effect. It created a civil commitment procedure for offenders who have been convicted of a qualifying sex crime and meet specified commitment criteria. See § 394.912(9)(10), Fla. Stat (2004).
The Act contained an "applicability" section which spelled out whom the Act covered. The first groupnot involved in this appeal  consisted of persons in custody on January 1, 1999, who had been convicted of a qualifying offense. That provision is not applicable here because petitioner-defendant Ward was not in custody on January 1, 1999.
The second group is the one involved here. The original "applicability" section stated:
916.45 Applicability of act.Sections 916.31-916.49 apply to all persons currently in custody who have been convicted of a sexually violent offense, as that term is defined in s. 916.32(8), as well as to all persons convicted of a sexually violent offense in the future.
§ 916.45, Fla. Stat. (Supp.1998) (emphasis added).
Under this language, an offender qualified if he was convicted of a sexually violent offense "in the future." The effective date of the Act was January 1, 1999, so "in the future" meant after January 1, 1999. Therefore an offender qualified for civil commitment if he was convicted of a sexually violent offense after January 1, 1999. The majority opinion and this opinion are unanimous on that point.
Defendant Ward was not convicted of a sexually violent offense after January 1, 1999. Under the original version of the Jimmy Ryce Act, the defendant did not qualify for civil commitment.
III.
In May, 1999, the legislature added new language to the "applicability" section. The issue in this case is how to interpret the amended statute.
The 1999 amendment added  using the word "and"a second requirement for an offender to qualify for civil commitment: the defendant had to be sentenced to total confinement. As amended, the "applicability" section stated:
394.25 Applicability of act. This part applies to all persons currently in custody who have been convicted of a sexually violent offense, as that term is defined in s. 394.912(9), as well as to all persons convicted of a sexually violent offense and sentenced to total confinement in the future.
§ 394.25, Fla. Stat. (emphasis added). The Act already required that an offender had to be convicted of a qualifying *486 offense after January 1, 1999. The Legislature simply added a second requirement: the defendant had to be sentenced to total confinement.
A dictionary definition of "and" states that it is "used as a function word to indicate connection or addition esp. of items within the same class or type; used to join sentence elements of the same grammatical rank or function." Webster's New Collegiate Dictionary 43 (1977).
The sentence elements here are:
Original Version
[convicted of a sexually violent offense] [in the future].
Amended Version
[convicted of a sexually violent offense] [and] [sentenced to total confinement] [in the future].
"And" means "and." Where previously there was one requirement (conviction after January 1, 1999), now there are two (conviction and total confinement), both of which must occur after January 1, 1999.
The defendant was not convicted of a qualifying crime after January 1, 1999. It follows that he is not eligible for civil commitment under the Act.
IV.
The majority opinion says that by adding new language to the statute, the Legislature changed the meaning of the already existing language. That is not correct.
The majority acknowledges that the eligible group was originally "all persons convicted of a sexually violent offense in the future," i.e., after January 1, 1999. The majority says that because the Legislature inserted new language before "in the future," it follows that the Legislature intended "in the future" to apply only to the new phrase, not the old phrase.
Respectfully, this is contrary to common understanding. The Jimmy Ryce Act already had an accepted meaning: that it applied to persons convicted of a qualifying offense after January 1, 1999. Under ordinary drafting practices, if the Legislature had wanted to change that part of the statute, it would have done so expressly and not by mere implication.
"Provisions of the original act or section which are repeated in the body of the amendment, either in the same or equivalent words, are considered a continuation of the original law." 1A Norman J. Singer, Statutes and Statutory Construction § 22:33, at 392 (2002).[n. 9]
[N. 9.] The amendment at issue here stated:
394.925 916.45 Applicability of act.This part applies Sections 916.31-916.49 apply to all persons currently in custody who have been convicted of a sexually violent offense, as that term is defined in s. 394.912(9) s.916.32(8), as well as to all persons convicted of a sexually violent offense and sentenced to total confinement in the future.
Ch. 99-222, § 20, Laws of Fla.
V
The majority opinion relies on the so-called doctrine (or rule) of the last antecedent, which is an aid to statutory construction. Majority opinion at 483. The majority opinion relies on that doctrine for the proposition that the phrase "in the future" in this case modifies only the phrase "sentenced to total confinement." The majority opinion is incorrect on that point.

*487 A.
Professor LeClercq has explained the doctrine of the last antecedent as follows:
By the late 1880s, Jabez Sutherland, who wrote Sutherland on Statutory Construction, had grappled with enough legal ambiguity after investigating complicated and litigated statutes that he invented a grammar/punctuation rule in hopes of resolving future statutory problems:
Referential and qualifying phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence. This proviso usually is construed to apply to the provision or clause immediately preceding it. The rule is another aid to discovery of intent or meaning and is not inflexible and uniformly binding. Where the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent.
Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma.
Terri LeClercq, Doctrine of the Last Antecedent: The Mystifying Morass of Ambiguous Modifiers, 2 Legal Writing 81, 86-87 (1996) (footnote omitted; emphasis added) (quoting 1891 version of Sutherland on Statutory Construction).[n. 10]
[N. 10.] The current version of Sutherland's doctrine appears in 2A Norman J. Singer, Statutes and Statutory Construction § 47:33, at 369-73 (6th ed.2000).
Professor LeClercq goes on to say that "the Doctrine of the Last Antecedent is problematic: it contradicts other linguistic principles; it contradicts the historical use of the comma; and the doctrine, itself poorly drafted, does not provide a concrete conclusion to the problem of ambiguous modifiers." LeClercq, supra, at 89. "Thus, rather than becoming `one more aid' in interpretation as Sutherland hoped, the Doctrine of the Last Antecedent has, in its hundred-plus year history, created as much confusion and disagreement as the ambiguous modifier its drafter set out to clarify." Id. [n. 11]
[N.11.] Further:
Unfortunately for those who need to depend on it, the Doctrine of the Last Antecedent itself calls for interpretation because Sutherland begins with what seems the fall-back rule of statutory interpretation and concludes with his specific point. He begins with a qualifier, that interpreters should use the Doctrine of the Last Antecedent "where no contrary intention appears." Appears where? Within the phrase or within the document as a whole? In the notes of a committee that wrote the original rule? If the language offers no "contrary intention," then the meaning is already "plain." If the contrary intent shows up within the sentence itself, then there is no need for the rule. And legislative intent or the drafter's intent is usually in question to begin with, so that search rarely clarifies the sentence in question. But Sutherland's fifth sentence *488 "where the sense of the entire act requires ..." implies that the reader has already investigated the phrase within the context of the entire act. Thus the Sutherland rule is a jumble. He probably meant to emphasize intent, and the sense of the act as a whole, over the announced doctrine.

Id. at 92-93.
B.
The doctrine of the last antecedent has been described by the United States Supreme Court as a rule of statutory construction which will be applied when it makes sense to do so, and will be ignored when it does not. Relying on Sutherland, the Court has said the rule of the last antecedent is one in
which a limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase that it immediately follows.... See 2A N. Singer, Sutherland on Statutory Construction § 47.33, p. 369 (6th rev. ed. 2000) ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent"). While this rule is not an absolute and can assuredly be overcome by other indicia of meaning, we have said that construing a statute in accord with the rule is "quite sensible as a matter of grammar."

Barnhart v. Thomas, 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003) (citation omitted; emphasis added). Compare id. (applying rule of the last antecedent) with Nobelman v. American Savings Bank, 508 U.S. 324, 330, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) (declining to apply rule of last antecedent and instead adopting an interpretation which "is the more reasonable one[.]"), and compare Miller v. Kase, 789 So.2d 1095, 1098-99 (Fla. 4th DCA 2001) (declining to apply doctrine of last antecedent) with Mallard v. Tele-Trip Co., 398 So.2d 969, 972 (Fla. 1st DCA 1981) (applying doctrine of last antecedent).
In this case the most relevant pronouncement is one by Justice Brandeis on behalf of the Supreme Court many years ago. "When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." Porto Rico Ry. v. Mor, 253 U.S. 345, 348, 40 S.Ct. 516, 64 L.Ed. 944 (1920). The rule of the last antecedent has no application here.
VI.
The majority opinion relies on a statement contained in In Re: Amendments to Florida Rule of Criminal Procedure 3.172, 911 So.2d 763, 765 (Fla.2005). This amendment adds a warning to be given in accepting pleas of guilty or nolo contendere, to warn the defendant regarding possible civil commitment consequences under the Jimmy Ryce Act. The majority reasons that this amendment to a procedural rule means that the Florida Supreme Court has already decided the substantive issue now before us.
The majority opinion's reasoning is incorrect. The law is well established that in adopting procedural rules, the court does not adjudicate substantive rights. See Ramos v. State, 505 So.2d 418, 421 (Fla.1987).
The concurring opinion takes the position that we are compelled to adopt the reading contained in the majority opinion, failing which the statute would be unconstitutional. The parties have *489 made no such argument in this case. The State has defended the trial court's ruling on the basis of grammatical rules, not constitutional rules. If the constitutional issue were properly before us (which it is not), the Legislature is allowed to, and has a rational basis for, narrowing the group eligible for civil commitment if it wishes to do so.
The Legislature from the outset intended commitment under the Act to be targeted for a small group of dangerous individuals. See § 394.910, Fla. Stat. (2004). It is a legislative prerogative to decide how to define the group of eligible individuals.
VII.
In conclusion, the defendant is not eligible for commitment under the Act, and we should grant the petition for writ of prohibition. I concur in certifying the question of great public importance.[n. 12]
[N. 12.] One other aspect of the majority interpretation bears mention. The Act required review of all offenders who had a qualifying conviction and were in custody on January 1, 1999. In some instances the State reviewed an offender and decided not to file civil commitment proceedings. Such offenders were released upon expiration of the criminal sentence. If any such offender were reincarcerated on a nonsexual offense after January 1, 1999, then under the majority's analysis, that offender must once again be evaluated under the Act for possible civil commitmenteven though that offender has already been rejected as a candidate for civil commitment. It is illogical to suppose that the Legislature intended this result.
Ward v. State, 936 So.2d 1143, 1152-57 (Fla. 3d DCA 2006) (Cope, C.J., concurring in part, dissenting in part).

Legislative History
Of course, the strength of Chief Judge Cope's opinion speaks for itself. However, even if one travels the troubling road taken by the majority in going beyond the "simple, and quite clear" language of the statute, the result is the same. The legislative history of the applicability statute provides additional and substantial support for Judge Cope's analysis.
As noted by Judge Cope, the original version of the Act applied to two groups of individuals: "persons currently in custody who have been convicted of a sexually violent offense"; and "persons convicted of a sexually violent offense in the future." § 916.45, Fla. Stat. (Supp.1998). Thus, the original version required either custody on January 1, 1999, paired with a conviction of a sexually violent offense, or a future act of sexual violence paired with a conviction for that act. It is undisputed that Ward's situation was not covered under this original version of the Act. More importantly, there is no evidence, either in the plain language of the Act or in the legislative history, that only months after its effective date the Legislature amended the Act with the intention to broaden its reach to additionally include anyone not in custody when the Act passed but who had some past conviction of a sexually violent offense and a new conviction for any type of crime that results in total confinement.
In fact, when the various amendments were being considered in the 1999 legislative session, the bill was referred to three committees, the Children and Families Committee, the Judiciary Committee, and the Fiscal Policy Committee. Each of these committees was guided by a Senate Staff Analysis and Economic Impact Statement *490 (hereafter Staff Analysis). As to the change made to section 916.45, now under consideration by this Court, the three Staff Analyses provided:
Children and Families Committee  Section I, entitled "Summary," is very short and states, "The bill would transfer ss. 916.31-.49, F.S., 1998 Supp., which was legislatively designated as the `Jimmy Ryce Involuntary Civil Commitment for Sexually Violent Predators' Treatment and Care Act,' to the new Part V of ch. 394, F.S." Fla. S. Comm. on Child. & Fams., CS for SB 2192 (1999) Staff Analysis 1 (Mar. 30, 1999), available at http://www. flsenate.gov/session/index.cfm?Mode= Bills&SubMenu=1&BI  Mode=ViewBill Info&BillNum=2192 (follow Staff Analyses PDF hyperlink). The summary further states, "In addition to some technical changes, substantive changes incorporated into CS/SB 2192 are designed to refine the implementation of the civil commitment process for sexually violent predators at the state agency level and at the trial level." Id.
Section II, titled "Present Situation," states, "The act applies to all persons currently in custody who have been convicted of a sexually violent offense, as that term is defined in the act, as well as to all persons convicted of a sexually violent offense in the future." Id. at 2.
Section III, titled "Effect of Proposed Changes," follows the order of Section II and spells out what the amended bill would mean to each section. While the transfer of sections 916.31-.49 to chapter V is referenced, no change is noted to the section regarding to whom the Act applies. Id. at 22.
Section V, titled "Economic Impact and Fiscal Note," does not reference the changes to section 916.45 at all. This section of the Staff Analysis does state, "The changes in this bill do not appear to present any measurable fiscal impact upon governmental entities. CS/SB 2192 mostly makes modifications that are technical or clarifying in nature to the Jimmy Ryce Act, which was passed last year by the 1998 Legislature." Id. at 29.
Judiciary Committee  Section I, titled "Summary," explains that in addition to technical and conforming changes, the bill makes a number of substantive changes, and lists out each of those changes. Fla. S. Comm. on Judiciary, CS for CS for SB 2192 (1999) Staff Analysis 1 (Apr. 8, 1999), available at http://www.flsenate.gov/session/index.cfm?Mode=Bills&SubMenu=1&BIMode=ViewBillInfo&BillNum=2192 (follow Staff Analyses PDF hyperlink). The changes to section 916.45 are not in this list.
Section II, titled "Present Situation," states, "The Act applies to all persons with a prior or current conviction for a sexually violent offense who are in custody, and to all persons convicted of a sexually violent offense in the future." Id. at 2.
Section III, titled "Effect of Proposed Changes," follows the order of Section II and spells out what the amended bill would mean to each section. Included here is a subsection titled "Miscellaneous," that explains, "Section 20 transfers and renumbers s. 916.45, F.S. (Supp.1998), as s. 394.925, F.S., and clarifies that the Act applies to all persons convicted of a sexually violent offense and sentenced to total confinement in the future." Id. at 17.
Section V, titled "Economic Impact and Fiscal Note," does not mention Section 20 or section 916.45 at all. Id. at 22-23.
Fiscal Policy  Sections I and II mirror the Children and Families Committee Staff Analysis. Fla. S. Comm. on Fiscal Policy, CS for CS for CS for SB 2192 (1999) Staff Analysis 1-2 (Apr. 15, 1999) available at http://www.flsenate.gov/ *491 session/index.cfm?Mode=Bills&Sub Menu=1&BIMode=ViewBillInfo & BillNum=2192 (follow Staff Analyses PDF hyperlink).
Section III, "Effect of Proposed Changes," differs from the Children and Families Committee Staff Analysis in some respects, but as to the section now under consideration, it is exactly the same. It references the transfer of sections 916.31.49 to chapter V, but no change is noted to the section regarding the applicability of the Act. Id. at 22.
Section V, "Economic Impact and Fiscal Note," states, "CS/CS/CS/SB 2192 primarily makes modifications to the Jimmy Ryce Act which are technical or clarifying in nature and does not have a significant adverse fiscal impact upon state and local governmental entities." Id. at 30.
These Staff Analyses clearly indicate that the legislators most closely involved with the 1999 amendments to the Act considered the addition of the wording "and sentenced to total confinement" to be merely a technical change. Neither the Children and Families Committee nor the Fiscal Policy Committee believed this wording was making a change that was worthy of an explanation in the "Effect of Proposed Changes" section. Further, the Judiciary Committee provided only a simple one-line explanation of the change, labeling the change a "clarification," specifically a clarification that, as originally passed, the Act applied to all persons convicted of a sexually violent offense and sentenced to total confinement in the future. Obviously, making a substantive change in the scope of the Act to broadly include a large but unknown number of individuals who have been convicted of a sexually violent offense at any time in the past in any jurisdiction could hardly be deemed a technicality or simple clarification.
This explicit evidence of the purpose of the changed text set out in the legislative history is clearly at odds with the majority's analysis. If the Legislature intended the 1999 amendment to make any past violent sex offender who was not in custody when the Act took effect subject to civil confinement, a more in-depth explanation and an economic impact analysis would have been included in the Staff Analyses, and the "Effect of Proposed Changes" section would surely have included a statement to the effect that the wording was added to substantially broaden the scope of the Act. This legislative history clearly lends support to Judge Cope's conclusion that the change in the wording of section 916.45 was intended to narrow the Act's reach, not broaden it.
PARIENTE, J., concurs.
NOTES
[1] See §§ 394.910-.931, Fla. Stat. (2004). The Act was originally codified in sections 916.31-.49, Florida Statutes (Supp.1998). The Legislature amended the Act in 1999 and moved its provisions to chapter 394. See Ch. 99-222, §§ 3-24, at 1374-87, Laws of Fla.
[2] Judge Cope dissented on the merits but concurred in certifying a question of great public importance. See Ward v. State, 936 So.2d 1143, 1152 (Fla. 3d DCA 2006) (Cope, C.J., concurring in part, dissenting in part).