Dear Sirs:
On behalf of the Town of Grant-Valkaria and Brevard County, you have asked for my opinion on substantially the following question:
Is a county-owned airport, which is located within the jurisdictional boundaries of a municipality, subject to the zoning ordinances and regulations of the municipality pursuant to section 125.015, Florida Statutes?
In sum:
A county-owned airport, which is located within the jurisdictional boundaries of a municipality, is not subject to the zoning ordinances and regulations of the municipality pursuant to section 125.015, Florida Statutes, as the statute places airport property outside the municipality's jurisdiction.
According to information submitted with your requests, Brevard County owns and operates the Valkaria Airport, a portion of which lies within the municipal boundaries of the Town of Grant-Valkaria (the town). Valkaria Airport is a public-use, federally-obligated airport. The town is considering adopting a zoning ordinance that would regulate certain aeronautical businesses and flight activities at the airport by changing the authorized activities that may be conducted on airport property. The primary purpose of the ordinance would be to prohibit commercial flight training schools and instruction based at the Valkaria Airport. Because the airport is owned and operated by the county and located within the city limits, you have both joined in this request for an Attorney General's Opinion.
Sections 125.011 — 125.019, Florida Statutes, authorize charter counties to undertake projects relating to public mass transportation, harbors, ports, shipping, and airport facilities.[1] A "project" for purposes of this act may include any one or a combination of two or more of the following:
"(a) Public mass transportation, harbor, port, shipping, and airport facilities of all kinds and includes, but is not limited to, harbors, channels, turning basins, anchorage areas, jetties, breakwaters, waterways, canals, locks, tidal basins, wharves, docks, piers, slips, bulkheads, public landings, warehouses, terminals, refrigerating and cold storage plants, railroads and motor terminals for passengers and freight, rolling stock, car ferries, boats, conveyors and appliances of all kinds for the handling, storage, inspection and transportation of freight and the handling of passenger traffic, airport facilities of all kinds for land andsea planes, including, but not limited to, landing fields, waterareas for the landing and taking off of aircraft, hangars, shops,buses, trucks, and all other facilities for the landing, taking off,operating, servicing, repairing, and parking of aircraft, and theloading and unloading and handling of passengers, mail, express andfreight;
(b) Administration buildings, toll highways, tunnels, causeways and bridges connected therewith or incident or auxiliary thereto, and may include all property, rights, easements, and franchises relating to any such project and deemed necessary or convenient for the acquisition, construction, purchase, or operation thereof; and
(c) Export trading companies, foreign sales corporations, consulting services corporations, cargo clearance centers, and customs clearance facilities as provided in s. 125.012(26)."[2]
(e.s.)
The act authorizes counties to acquire "projects" of any municipality within the county. Ad valorem taxes of not more than 1 ½ mills may be levied on all county property for "the cost of constructing, operating, maintaining, expanding, enlarging, improving, or developing any project or projects" specified in the act.[3] In addition, the board of county commissioners of any county operating under the act may issue general obligation bonds, revenue bonds, or other evidences of indebtedness of the county to pay all or a part of the cost of any projects undertaken pursuant to this act.[4] Projects financed under the provisions of sections 125.011 — 125.019, Florida Statutes, and the income from these projects and any bonds issued, are free from state taxation.[5]
I would note that Brevard County is a charter county and I must assume that the board of county commissioners has, by resolution, elected to exercise the powers conferred by sections 125.011 — 125.019, Florida Statutes, as required by the act.[6]
Section 125.015, Florida Statutes, provides in part that
"[a]ny project owned or operated by such county and lying within the boundaries of a municipality shall be under the exclusive jurisdiction of the county and shall be without the jurisdiction of said municipality."
The clear language of the statute removes any such project from the jurisdiction of the municipality in which it may lie and places exclusive jurisdiction for the project with the county.
Several cases have considered the implications of this language in section 125.015, Florida Statutes.[7] In City of Opa-Locka v.Dade County, [8] the city filed a petition for a writ of mandamusseeking an order requiring the county tax assessor and county taxcollector to assess and collect city ad valorem taxes for three previous years on leasehold interests at the Opa-Locka Airport lying within the city limits. The district court of appeal held that exclusive jurisdiction over a county-owned airport facility was vested in the county and the facility was subject only to suchad valorem taxes as were imposed by the county and not to any municipal ad valorem tax levy. As the court noted:
"The language of [section 125.015, Florida Statutes], quoted above, leaves no doubt as to the legislative intent. Exclusive jurisdiction over county owned airport facilities is vested in the county. That grant alone would have been sufficiently clear as to require no interpretation. In an abundance of caution, the Legislature added that such facilities `shall be without the jurisdiction' of said municipality."[9]
Subsequently, in a second City of Opa-Locka v. DadeCounty, [10] the city brought a declaratory judgment proceeding to determine the city's obligations with regard to that portion of the airport operated by the county, but lying within the city's boundaries. The city had offered to extend various municipal services to persons engaged in business or residing on that portion of the airport that was within the boundaries of the municipality. The city also intended to levy a municipal occupational license tax on those engaging in or managing any business, profession, or occupation within the city's jurisdiction. The court again relied on section 125.011(2), Florida Statutes, and stated that
"The legislative intent of Section 125.015, Florida Statutes, is clear and that section applies to the entire portion of the Airport which lies within the municipal limits of the plaintiff city, including all of the facilities and property necessary or convenient for the operation of the Airport lying within such portion."[11]
The court noted that the city was authorized to levy a municipal occupational license tax by statute, but that its authority was limited to exercise "within its jurisdiction" and that the "City, therefore, may not lawfully levy any such municipal tax within that part of the defendant County's Airport which though lying within the City's boundaries, is `without the jurisdiction' of plaintiff City."[12] Pursuant to the court's order, "[the city], its officers, employees and agents, have no jurisdiction upon and may not lawfully exercise jurisdiction upon any part of the Airport, its facilities, easements or property lying within [the city's] boundaries, except in the event of hot pursuit of persons suspected of having committed violations of law (including ordinances of plaintiff City or defendant County) within the City's boundaries but outside of the boundaries of the Airport."[13]
Again, in 1988, a municipality sought to enforce an occupational licensing ordinance upon a business at a county-owned and operated airport located within the city limits. In City of Dania v. HertzCorporation, [14] the court reviewed section 125.015, Florida Statutes, and cited the two earlier City of Opa-Locka cases, concluding that "[u]nder Florida law a county which operates an airport that is located in whole or in part within a municipality has jurisdiction over the airport and all those facilities necessary and convenient to its operation, to the exclusion of any exercise of jurisdiction by the municipality."[15] The city argued that the Legislature had intended a distinction between projects acquired from the municipality and those which were acquired from private sources. Thus, the city concluded that the grant of exclusive jurisdiction in section 125.015, Florida Statutes, applied only to those projects or parts of projects acquired directly from a municipality, either by purchase or condemnation. The court rejected this argument as unreasonable and construed the first sentence of section 125.015 as referring to projects located with a municipality whether or not they were acquired "from" the municipality.
The Legislature has declared that an airport owned or operated by a county and lying within the boundaries of a municipality is under the exclusive jurisdiction of the county and shall be "without the jurisdiction of said municipality." I am aware of no authority for a municipality to zone property or otherwise exercise jurisdiction over property "without its jurisdiction" with the exception of "hot pursuit." Rather, section 166.021(1), Florida Statutes, granting municipalities "the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and . . . exercise any power for municipal purposes, except when expressly prohibited by law" limits the exercise of extraterritorial powers by municipalities. Subsection (3) of the statute prescribes limitations on the subjects that municipal legislation may address:
"The Legislature recognizes that pursuant to the grant of power set forth in s. 2(b), Art. VIII of the State Constitution, the legislative body of each municipality has the power to enact legislation concerning any subject matter upon which the state Legislature may act, except:
(a) The subjects of annexation, merger, and exercise ofextraterritorial power, which require general or special law pursuant to s. 2(c), Art. VIII of the State Constitution[.]" (e.s.)
Thus, any exercise of extraterritorial powers by municipalities requires a grant of general or special law.
I am persuaded by the language of section 125.015, Florida Statutes, and the case law discussed above, that the Valkaria Airport, owned and operated by Brevard County, is "without the jurisdiction" of the Town of Grant-Valkaria and the city has no authority to exercise its zoning powers or regulations over this property.
In sum, it is my opinion that a county-owned airport, which is located within the jurisdictional boundaries of a municipality, is not subject to the zoning ordinances and regulations of the municipality pursuant to section 125.015, Florida Statutes, as the statute places airport property outside the municipality's jurisdiction.
Sincerely,
Bill McCollum Attorney General
BM/tgh
[1] See s. 125.011(2), Fla. Stat., defining "[p]roject" and (1), defining "[c]ounty" to mean a charter county.
[2] Section 125.011(2), Fla. Stat., defines the term "[p]roject" for purposes of the act.
[3] Section 125.016, Fla. Stat.
[4] Section 125.013(1), Fla. Stat.
[5] Section 125.019(1), Fla. Stat.; but see s. 125.019(1), Fla. Stat., which states that
"[t]he exemption granted by this subsection shall not be applicable to any tax imposed by chapter 220 on interest, income, or profits on debt obligations owned by corporations."
[6] See s. 125.011(1), Fla. Stat.
[7] The language in s. 125.015, Fla. Stat., existed originally in the Port Authority Act, Ch. 22963, s. 4, Laws of Fla. 1945, and was brought into the statutes by s. 4, Ch. 71-249, Laws of Fla. 1971.
[8] 247 So. 2d 755 (Fla. 3d DCA 1971), cert. denied,252 So. 2d 802 (Fla. 1971).
[9] Id. at p. 760.
[10] 384 So. 2d 937 (Fla. 3d DCA 1980).
[11] Id. at p. 938.
[12] Supra n. 10 at p. 938.
[13] Id.
[14] 518 So. 2d 1387 (Fla. 4th DCA 1988).
[15] Id. at p. 1388.